KATHY COLLINS, DWAYNE HOLMAN, MARJORIE CHATTAWAY AND NORMAN CHATTAWAY, APPELLANTS, v. WILLIAM R. BURNS and STELLA BURNS, Respondents.

No. 17483

August 27, 1987 741 P.2d 819

*Linda E. Johnson,* Carson City, for Appellants.

*Vargas & Bartlett* and *David A. Harris,* Reno; *Bean & Smedley* and *Lawrence L. Waggoner,* Layton, Utah, for Respondents.

## OPINION

*Per Curiam:*

William and Stella Burns sued on a promissory note executed by appellant Dwayne Holman in connection with the sale of a business to appellants Kathy Collins and Marjorie Chattaway. Appellants interposed the defense of fraud and counterclaimed for damages alleging that respondents had misrepresented the profitability of the store. The district court concluded appellants had not proven fraud because they were not justified in relying on the representations and because no damages resulted from the misstatements.

Dwayne Holman and Kathy Collins wanted to buy a business to provide an income for her parents, Marjorie and Norman Chattaway. In 1980, Holman attended a meeting at which realtor Jerry Golanty made a sales pitch for "Schnapps N Stuff," a Carson City liquor store owned by the Burnses. Golanty distributed a fact sheet on the store which listed gross sales and expenses and which reflected a growing business. By subtracting expenses from income, Holman quickly determined the store could provide the Chattaways with an acceptable income even absent growth. Holman and Collins visited the store and were shown various business records. Collins carefully compared the expense figures on the realtor's fact sheet with entries in the expense ledger. The fact sheet appeared to be correct. William Burns showed Holman and Collins a graph charting sales in four product areas. Each one-half inch space on the graph represented $300.00 in sales. Total monthly sales could be determined by adding all the weekly sales. Collins compared the information on the graph to the gross sales figures on the fact sheet and found the numbers generally close. In fact, however, the fact sheet overrepresented the store's income by several thousand dollars a month. The chart showed sales inflated by over $7,000.00 in each of two months. The Burnses' federal income tax returns reported business losses of $11,474.00 for 1979 and $18,321.00 for the first nine and a half months of 1980.

Relying on the earning history of the liquor store, as represented by the realtor's fact sheet and the Burnses' chart, Collins and her mother, Marjorie Chattaway, decided to purchase Schnapps N Stuff for $93,575.00, plus inventory. They made a down payment of $10,075.00. In addition, the Chattaways exe-

cuted a promissory note secured by a second deed of trust on property in California. Holman executed two promissory notes for $73,500.00 and $19,203.20 to Collins and Chattaway who assigned them to the Burnses. Escrow closed September 15, 1980. Collins and the Chattaways took over the store. Actual gross sales initially remained about the same, then plummeted. The store never realized a profit. Collins spent over $90,000.00 of her own money to keep the business going until she closed it in August, 1983. Holman defaulted on payments on the $73,500.00 note. The Burnses brought this action for the unpaid principal in the amount of $71,131.62, plus interest. Appellants asserted fraud as a defense and counterclaimed for damages.

The elements of intentional misrepresentation are a false representation made with knowledge or belief that it is false or without a sufficient basis of information, intent to induce reliance, and damage resulting from the reliance. Lubbe v. Barba, 91 Nev. 596, 599, 540 P.2d 115, 117 (1975). The district court found no justifiable reliance and no damage.

Appellants contend the district court misapprehended the requirements of justifiable reliance. The court noted that appellants did not demand to examine "hard factual income data" or make such an examination a condition of the purchase. Under these circumstances, the court concluded reliance on the realtor's figures was not justifiable. We disagree.

Lack of justifiable reliance bars recovery in an action at law for damages for the tort of deceit. Pacific Maxon, Inc. v. Wilson, 96 Nev. 867, 870, 619 P.2d 816, 818 (1980). However, this principle does not impose a duty to investigate absent any facts to alert the defrauded party his reliance is unreasonable. Sippy v. Cristich, 609 P.2d 204, 208 (Kan.App. 1980). The test is whether the recipient has information which would serve as a danger signal and a red light to any normal person of his intelligence and experience. *Id.* It has long been the rule in this jurisdiction that the maxim of *caveat emptor* only applies when the defect is patent and obvious, and when the buyer and seller have equal opportunities of knowledge. Fishback v. Miller, 15 Nev. 428, 440 (1880). Otherwise, a contracting party has a right to rely on an express statement of existing fact, the truth of which is known to the party making the representation and unknown to the other party. *Id.* The recipient of the statement is under no obligation to investigate and verify the statement. *Id.*

The Michigan Supreme Court long ago commented on the injustice of allowing a party to say,

> It is true that I lied to you, and for the purpose of defrauding you, but you were guilty of negligence, of want of ordinary care, in believing that I told you the truth; and because you trusted to my word, when you ought have suspected me of falsehood, I am entitled to the fruits of my falsehood and cunning, and you are without a remedy.

Bristol v. Braidwood, 28 Mich. 191, 196 (1873) *quoted in* Besett v. Basnett, 389 So.2d 995, 998 (Fla. 1980). Such a result would be untenable. We agree with the Florida Supreme Court that a person guilty of fraud should not be permitted to use the law as his shield, "[W]hen the choice is between the two-fraud and negligence—negligence is less objectionable than fraud. Though one should not be inattentive to one's business affairs, the law should not permit an inattentive person to suffer loss at the hands of a misrepresenter." Besett v. Basnett, *supra,* 389 So.2d at 998.

In the case at hand, we are unable to discern any facts that should have alerted appellants that the income figures provided by respondents were grossly inflated. Although the sales chart shown to appellants was understood to be a management tool and not an exact statement of income, appellants had no reason to suspect the chart did not accurately state sales within a reasonable margin. Certainly, they were not given to understand that the chart consistently overstated sales by thousands of dollars, and, in some months, by amounts over 50 percent of actual sales. Given these facts, we conclude that appellants had a right to rely on the representations made by the Burnses and that their reliance was justifiable.

The district court also concluded that appellants suffered no damage because subsequent declines in sales resulted solely from general economic conditions. We disagree. In reliance on the misrepresentations, appellants, who thought they were purchasing a viable business, gained ownership of a losing enterprise with no proven potential for any profit at all. Regardless of subsequent events, appellants were damaged in the transaction.

The measure of damages can be determined in one of two ways. First, a defrauded party may be able to recover the "benefit of the bargain," that is the value of what he would have received had the representations been true, less what he actually received. Randano v. Turk, 86 Nev. 123, 130, 466 P.2d 218, 222-223 (1970). We think this measure inappropriate when the defrauded party has avoided the obligation arising from the contract by asserting fraud as a defense. The second measure of damages allows the defrauded party to recover what he has lost "out-of-pocket," that is the difference between what he gave and

what he actually received. *Id.* Appellants are entitled to recover the difference between the amount they paid to the respondents and the actual value of the business at the time of the sale.

Appellants contend they should recover all their losses throughout the life of the business. We cannot agree. The district court found subsequent operating losses were solely due to a recession that devastated the Carson City area in the early 1980's. The trial court's determination of a question of fact will not be disturbed unless clearly erroneous or not based on substantial evidence. Ivory Ranch v. Quinn River Ranch, 101 Nev. 471, 472, 705 P.2d 673, 675 (1985); NRCP 52(a). Since there is substantial evidence in the record indicating a severe economic recession in the period following the sale of the store, we will not disturb the district court's finding that the economic climate caused subsequent losses.

Having determined that the trial court erred in concluding that appellants failed to prove fraud because they could not show justifiable reliance or damage, we reverse the judgment of the district court and remand the cause for entry of judgment consistent with this opinion and for a determination of damages suffered by the appellants.