**FALLON MINING COMPANY, INC., Plaintiff–Appellee,**

v.

**Thomas R. CADDELL; Paul L. Prosser; Apache Enterprises; CLPR Alliance; Capro, Defendants–Appellants,**

**and**

**Industrial Kiln and Dryer; Richard E. Ringer; Edward L. Snider, Defendants.**

**Nos. 02–15461, 02–15536.**

**D.C. No. CV–98–0220–DWH(RAM).**

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 11, 2003.*

Decided Oct. 2, 2003.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2)(C).

Before O'SCANNLAIN, TASHIMA, Circuit Judges, and MATZ, District Judge.**

### MEMORANDUM***

Defendants appeal from an amended judgment following a four day bench trial in which the district court awarded Plaintiff Fallon Mining Company ("Fallon") $220,165 in "out of pocket" damages for fraud and $500,000 in damages for libel. Defendants allege that the district court erred in finding joint and several liability, and in concluding that Fallon reasonably relied on fraudulent misrepresentations.

** The Honorable A. Howard Matz, United States District Judge for the Central District of California, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36–3.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.[1]

## I. Joint and Several Liability

■ Defendants recognize that Nevada law extends joint and several liability to "joint venturers" but argue that Prosser should be excluded from the joint venture because his "only involvement [in CLPR] was to provide consulting engineering services on one occasion and initial work on an unrelated project."[2] The record provides substantial evidence that Prosser formed part of the "informal partnership" known as "Caddell, Luther, *Prosser*, and Ringer," a.k.a., CLPR Alliance. Defendants reason that Prosser is not a joint venturer because he played a minor role during the contracting phase of the transaction at issue. But Defendants do not contest that Prosser was an active member of CLPR and that CLPR did business in Nevada. This is sufficient to trigger joint and several liability for wrongful acts committed in furtherance of the joint enterprise. *See Radaker v. Scott*, 109 Nev. 653, 855 P.2d 1037, 1040 (1993).

## II. Measure of Damages

■ Defendants next contend that the district court erred in awarding Fallon its "out of pocket" expenses. They rely on the contract to assert that the most Fallon can recover is its $98,000 investment in the machine. Yet any attempt to limit Fallon to contractual damages ignores the fact that Fallon is entitled to recover damages for CLPR's fraud and deceit. *Collins v. Burns*, 103 Nev. 394, 741 P.2d 819, 821 (1987). In such cases, the injured party is entitled to "out of pocket" expenses. *Id.* at 822. Even if Fallon is limited to remedies provided in the agreement, defendants failed to conform to the terms of provision 11(b) of the contract, which requires CLPR to remit "good funds" to Fallon upon Fallon's returning the machine. CLPR eventually agreed to repay Fallon the cost of the machine. But before Fallon's attorney had time to deposit the money, CLPR stopped payment on the check. Since CLPR intentionally misrepresented the benefits of the System, and did not remit "good funds," the court properly applied the "out of pocket" measure.[3]

## III. Reasonable Reliance

Defendants argue that Fallon could not reasonably have relied on its fraudulent misrepresentations because Fallon allegedly acknowledged in a March 24, 1998, letter that the machine resembled "old Bureau Mines Technology." This phrase does not exist in the March 24 letter, and the pin cites provided in the brief refer to unrelated material. Perhaps feeling generous, Fallon provides an "alternative" phrase in the March 24 letter that might be said to support the Defendants' proposition. However, the letter at issue states only that Fallon had access to public information concerning the general processes

1. Because the parties are familiar with facts, we recite them here only as necessary to explain our analysis.

2. Because defendants fail to develop or support their contention that neither Luther nor Caddell is a joint venturer, we need not consider the allegation. *See United States v. Calabrese*, 825 F.2d 1342, 1346–47 (9th Cir. 1987).

3. Luther also claims that the damage award should have reflected his purchase of 30,000 shares of Fallon stock in December 1997. That purchase, however, preceded the parties' April 1998 agreement to return the consideration they had previously exchanged. (*I.e.*, Fallon would return the equipment to defendants, who would remit $98,000 to Fallon.) Because the purchase was not part of the later agreement, it does not offset the award for affirmative fraud based on the later agreement.

behind CLPR's technology; it does not state that the general information had informed Fallon that the System was inherently unworkable. The district court did not err in rejecting defendants' baseless claim.

## IV. Exclusion of Ulrich Schroeder's Testimony

■ Next, defendants allege that the district court abused its discretion by not excluding the testimony of Ulrich Schroeder, who testified that the ICM/CLPR deal ended bitterly. Under Fed.R.Evid. 404(b), Schroeder's testimony was admissible because it demonstrated behavior by CLPR similar to that CLPR exhibited while dealing with Fallon, and insofar as that testimony reflected a prior failure of the System, it was relevant and admissible to show CLPR's intent, plan, knowledge, and absence of mistake.

## V. Defamatory Damages

Defendants argue that Caddell's letters did not express defamatory statements about the company. However, Caddell himself admitted that the purpose of the letters was to sever relations between the company and its investors. The letters also refer to Boseman as the representative of "FMC." We conclude that the district court did not clearly err in finding that the defamatory statements refer to Boseman in his capacity as CEO of Fallon.

## VI. Computation of Defamation Award

■ Defendants also contend that the defamation award is invalid for being excessive and arbitrary. In cases of defamation per se, which includes disparagement of one's trade or business, the plaintiff need not set forth proof of special damages but instead may recover general damages, including "harm which normally results from such a defamation." *K–Mart Corp. v. Wash.*, 109 Nev. 1180, 866 P.2d 274, 282

(1993). The instant case falls squarely within the confines of the defamation per se doctrine. Defendants' citation to *Olympia Equipment Leasing Co. v. Western Union*, 797 F.2d 370 (7th Cir.1986), which does not apply Nevada law, is inapposite. This award is not clearly erroneous, nor is it subject to an "arbitrary and capricious" review as suggested by defendants.

## VII. Exclusion of Defamation Witnesses

■ Finally, defendants allege that the district court abused its discretion when it decided that George Price's and Fred Falco's testimony concerning Boseman's alleged thievery and dishonesty wasted time and proved more prejudicial than relevant. The only basis for overturning the court's ruling is a belief that the court should have exercised its discretion in favor of defendants rather than plaintiff. The bare contention that the court made a mistake is insufficient to overcome the abuse of discretion standard. *Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir.1996). Likewise, we need not address defendants' bald allegations that the court abused its discretion in limiting the testimony of Craig Demetreas or expert witness Fred Dole. Defendants provide no basis for overturning the district court's rulings other than that the court "erred."

## CONCLUSION

We affirm the district court's ruling that all defendants except Snider were joint venturers, that Fallon justifiably relied on defendants' knowing misrepresentations, and that Fallon was entitled to "out of pocket" damages. Defendants' evidentiary challenges are rejected.

**AFFIRMED.**