[No. C016473. Third Dist. June 21, 1994.]

EDWARD ROYCE STOLZ II, Plaintiff and Appellant.
WONG COMMUNICATIONS LIMITED PARTNERSHIP et al.,
Defendants and Respondents.

**COUNSEL**

John S. Sargetis for Plaintiff and Appellant.

Lynn A. Dean, Richard T. Dudek and David L. Muller for Defendants and Respondents.

**OPINION**

**SIMS, Acting P. J.**—Plaintiff Edward Royce Stolz II, transacting business as Royce International Broadcasting Station KWOD-FM, appeals from summary judgment entered in favor of defendants Wong Communication Limited Partnership, Kin Shaw Wong, and Fay Gum Wong (the Wong defendants), in plaintiff's action for malicious prosecution, abuse of process, and interference with economic relations. Plaintiff contends the trial court erred in determining no cause of action was stated by the complaint's allegations

that defendants maliciously filed with the Federal Communications Commission (FCC) an application competing with plaintiff's application to renew a license to operate a particular radio frequency. Plaintiff also purports to appeal from summary judgment in favor of defendants Paul Besozzi, Stephen Diaz Gavin, and Besozzi & Gavin (the attorney defendants).[1]

We shall affirm the judgment in favor of the Wong defendants and dismiss the appeal as to the attorney defendants.

### FACTUAL AND PROCEDURAL BACKGROUND

In March 1992, plaintiff filed this action against the Wong defendants and their attorneys, asserting causes of action for malicious prosecution, abuse of process, and "interference with economic relationship." The complaint alleged as follows:

Plaintiff is the licensee of radio station KWOD 106.5 FM in Sacramento and has held the license since 1975. In 1983, plaintiff filed with the FCC an application for renewal of the license. The Wong defendants filed with the FCC a competing application for the same frequency.

After an investigatory period, the FCC determined the applications were mutually exclusive, and a comparative hearing was necessary to evaluate the two applications to determine "which of the proposals would, on a comparative basis, better serve the public interest." Following the hearing, in January 1989 an administrative law judge (ALJ) granted plaintiff's application for renewal after weighing the relative merits of the two applications. The ALJ determined among other things that the Wong partnership was a "sham" partnership in that its true controlling partner was Kin Shaw Wong, not his sister Fay Gum Wong. The result of this finding was to deny to the Wongs certain "integration credits" for purposes of comparative evaluation.

The Wong defendants sought administrative review, and in September 1989 the FCC Review Board agreed with the ALJ that the license should go to plaintiff. The review board noted the Wongs had not disputed the ALJ's observation that Mr. Wong had prior unsatisfactory business dealings with plaintiff, and "Mr. Wong admits that he was 'angry' with the way Mr. Stolz had conducted his business towards Mr. Wong personally and that filing a competing application is a way to challenge Mr. Stolz's business."

The Wong defendants sought further review within the FCC, and in November 1990 the FCC affirmed the review board's decision. The Wong

---

[1] Another defendant named in the complaint, David C. Williams, is not a party to this appeal.

defendants sought review in federal court but dismissed the case before it was heard.

Plaintiff's complaint alleged that the Wong application was prosecuted without probable cause and with malice.

The complaint did not allege any interruption of plaintiff's operation. (It is undisputed on appeal that at all times throughout the FCC investigation, hearing and review process, plaintiff continued to operate KWOD 106.5 FM.)

The Wong defendants moved for summary judgment on various grounds including (1) failure of the complaint to state a cause of action, in that filing an application for an FCC license does not give rise to a claim for malicious prosecution or abuse of process, and (2) the complaint omitted essential elements of a cause of action for interference with economic relationship. The trial court granted the motion, determining the complaint failed to state a cause of action. In July 1993, judgment was entered in favor of the Wong defendants.

The attorney defendants later filed a similar motion for summary judgment, which was granted.

Plaintiff filed a notice of appeal from the orders granting the motions and "any Judgment thereon."

DISCUSSION

I. *Dismissal of Appeal Re: Attorney Defendants*

■ As to the attorney defendants, plaintiff filed a notice of appeal from the "ORDER ON SUMMARY JUDGMENT MOTION . . . and any Judgment thereon." However, the record on appeal contains no judgment as to the attorney defendants. The record contains only an order granting the summary judgment motion as to those defendants.

An order granting a motion for summary judgment is not an appealable order or judgment. (Code Civ. Proc., § 904.1; *Modica* v. *Merin* (1991) 234 Cal.App.3d 1072, 1073-1075 [285 Cal.Rptr. 673]; *Hooks* v. *Southern Cal. Permanente Medical Group* (1980) 107 Cal.App.3d 435, 441 [165 Cal.Rptr. 741].)

Therefore, the appeal as to the attorney defendants is dismissed.

## II. *Appeal Re: Wong Defendants*

### A. *Standard of Review*

■ A summary judgment motion necessarily includes a test of the pleadings and can become a motion for judgment on the pleadings. (*Barnett v. Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219].) We explained in *FPI Development, Inc.* v. *Nakashima* (1991) 231 Cal.App.3d 367 [282 Cal.Rptr. 508]: "The procedure for resolving a summary judgment motion presupposes that the pleadings are adequate to put in issue a cause of action or defense thereto. [Citation.] However a pleading may be defective in failing to allege an element of a cause of action or in failing to intelligibly identify a defense thereto. In such a case, the moving party need not address a missing element or, obviously, respond to assertions which are unintelligible or make out no recognizable legal claim. The summary judgment proceeding is thereby necessarily transmuted into a test of the pleadings and the summary judgment motion into a motion for judgment on the pleadings. In these circumstances it has been said that a defendant's 'motion for summary judgment necessarily includes a test of the sufficiency of the complaint and as such is in legal effect a motion for judgment on the pleadings.' [Citation.]" (*Id.* at p. 382, italics omitted.) Where a motion for summary judgment is in effect a motion for judgment on the pleadings, the court may grant a plaintiff leave to amend the complaint. (*Hejmadi* v. *AMFAC, Inc.* (1988) 202 Cal.App.3d 525, 536 [249 Cal.Rptr. 5].)

Our review is de novo. (*Saldana* v. *Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1511 [285 Cal.Rptr. 385] [summary judgment]; 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 263, p. 565 [motion for judgment on pleadings].) Where there is sufficient legal ground to support the granting of the motion, it will be upheld regardless of the grounds upon which the trial court relied. (*Troche* v. *Daley* (1990) 217 Cal.App.3d 403, 407 [266 Cal.Rptr. 34]; 9 Witkin, *op. cit. supra*, Appeal, § 259, p. 266.)

### B. *Process and Purpose of FCC Licensing*

The purpose of federal regulation of broadcasting is "to insure that 'the broadcasting privilege will not be a right of selfishness' but would rather 'rest upon an assurance of public interest to be served.' " (*Citizens Communications Center* v. *F. C. C.* (D.C. Cir. 1971) 447 F.2d 1201, 1206 [145 App.D.C. 32].) To accomplish this purpose, the Federal Communications Act provides for licenses of limited time duration and authorizes renewal only if the public interest will thereby be served. (*Ibid.*; see 47 U.S.C. § 307.)

Thus, 47 United States Code section 301, provides: "It is the purpose of this chapter, among other things, to maintain the control of the United States over all the channels of radio transmission; and to provide for the use of such channels, but not the ownership thereof, by persons for limited periods of time, under licenses granted by Federal authority, and no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license. . . ." (47 U.S.C. § 301.) Additionally, 47 United States Code section 307(c), provides in part: ". . . Each license granted for the operation of a radio broadcasting station shall be for a term of not to exceed seven years. . . . Upon the expiration of any license, upon application therefor, a renewal of such license may be granted from time to time for a term of . . . not to exceed seven years in the case of radio broadcasting station licenses . . . if the Commission finds that public interest, convenience, and necessity would be served thereby. . . ."

"The policy of the Act is clear that no person is to have anything in the nature of a property right as a result of the granting of a license. Licenses are limited to a maximum [ ] duration, may be revoked, and need not be renewed. Thus the channels presently occupied remain free for a new assignment to another licensee in the interest of the listening public. [¶] Plainly it is not the purpose of the Act to protect a licensee against competition but to protect the public." (*Commission v. Sanders Radio Station* (1939) 309 U.S. 470, 475 [84 L.Ed. 869, 874, 60 S.Ct. 693].)

Where two applications compete for the same frequency and are mutually exclusive, the FCC holds a comparative hearing to weigh the relative merits of both before granting either application. (47 U.S.C. § 309(e); *Ashbacker Radio Co.* v. *F.C.C.* (1945) 326 U.S. 327 [90 L.Ed. 108, 66 S.Ct. 148].) *Ashbacker* held a licensee applying for a change to a different operating frequency was entitled to a comparative hearing before the FCC granted the license for that frequency to another new applicant. The purpose of the process is to compare the applicants to determine which one will better serve the public interest. (47 U.S.C. § 309(a); *Ashbacker, supra,* 326 U.S. at p. 333 [90 L.Ed. at p. 112]; *Communi-Centre Broadcasting, Inc.* v. *F.C.C.* (D.C. Cir. 1988) 856 F.2d 1551, 1555 [272 App.D.C. 389] [unlike bipolar civil court action, a comparative licensing case has the interest of the public as its focus].) "[T]he purpose of the comparative hearing [is to] choos[e] the applicant who will provide the 'best practicable service to the public' and who will insure the 'maximum diffusion of control of the media of mass communications.' " (*Citizens Communication Center* v. *F.C.C., supra,* 447 F.2d at p. 1207.)

There is no statutory preference in favor of the incumbent applicant at the comparative hearing. (*Citizens Communications Center* v. *F.C.C.,*

*supra*, 447 F.2d at p. 1207.) "No licensee obtains any vested interest in any frequency." (*Ashbacker Radio Co.* v. *F.C.C., supra*, 326 U.S. at pp. 331-332 [90 L.Ed. at p. 112].) Both new applicants and renewal applicants must demonstrate that the grant or continuation of a license will serve the public interest. (*Citizens Communication Center, supra*, 447 F.2d at p. 1207; see 47 U.S.C. § 307(a), (c).)

A licensee which has served its community with meritorious service has a "renewal expectancy" which may be considered as one factor in the weighing process of the comparative evaluation.[2] (*Victor Broadcasting, Inc.* v. *F.C.C., supra*, 722 F.2d at pp. 760-761.) Nevertheless, the courts have safeguarded the principle of free competition in FCC licensing in order to further the public interest. Thus, *Citizens Communication Center* v. *F.C.C., supra*, 447 F.2d 1201, held invalid an FCC policy that would terminate the comparative hearing once the incumbent demonstrated good past performance, without considering the merits of the new applicant's proposal. Superior past performance is but one factor (though it may be a heavily weighted one) to be weighed against the relative strengths and weaknesses of both applications. (*Id.* at pp. 1212-1213.) The *Citizens Communication Center* court noted that not a single competing application had been filed during the time the FCC policy was in effect, and the court concluded: "Our decision today restores healthy competition by repudiating a Commission policy which is unreasonably weighted in favor of the licensees it is meant to regulate, to the great detriment of the listening and viewing public." (*Id.* at p. 1214.)

With that background in mind, we proceed to the question whether plaintiff's complaint stated a cause of action for malicious prosecution.

## C. *Malicious Prosecution*

Plaintiff contends the trial court erred in determining that no cause of action for malicious prosecution arises by the pursuit of an application competing for an FCC license. Plaintiff believes the Wongs' filing of a competing application with the FCC gives rise to a cause of action for malicious prosecution because the Wong defendants initiated the proceedings by submitting and prosecuting their application to the FCC, the FCC

---

[2]The weight to be given to a renewal expectancy in a particular case depends upon the applicability of the policy reasons justifying the expectancy: (1) the challenger may not live up to its paper proposal; (2) the prospect of renewal encourages licensees to make investments to ensure quality service; and (3) haphazard restructuring or rapid turnover of licensees may not serve the public interest. (*Victor Broadcasting, Inc.* v. *F.C.C.* (D.C. Cir. 1983) 722 F.2d 756, 762 [232 App.D.C. 270].) The FCC gives more weight to a renewal expectancy than to other factors such as diversification. (*Id.* at p. 765.)

hearing process is an adversarial one, and "but for" the Wong defendants submitting the application, there would never have been a comparative hearing. We disagree.

"The common law tort of malicious prosecution originated as a remedy for an individual who had been subjected to a maliciously instituted criminal charge, but in California, as in most common law jurisdictions, the tort was long ago extended to afford a remedy for the malicious prosecution of a civil action." (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498].) The tort applies to adversarial administrative proceedings. (*Hardy* v. *Vial* (1957) 48 Cal.2d 577, 581 [311 P.2d 494, 66 A.L.R.2d 739] [following reinstatement by State Personnel Board, college professor could bring malicious prosecution action against person whose false accusations of unprofessional conduct led to dismissal and administrative hearing].) In *Hardy, supra,* 48 Cal.2d at page 581, the Supreme Court adopted the Restatement rule now set forth in section 680 of the Restatement Second of Torts, as follows:

"One who takes an active part in the initiation, continuation or procurement of civil proceedings against another before an administrative board that has power to take action adversely affecting the legally protected interests of the other, is subject to liability for any special harm caused thereby, if

"(a) he acts without probable cause to believe that the charge or claim on which the proceedings are based may be well founded, and primarily for a purpose other than that of securing appropriate action by the board, and

"(b) except where they are ex parte, the proceedings have terminated in favor of the person against whom they are brought."

"[T]o justify recovery for malicious prosecution, there must actually have been an initiation of civil proceedings *against* another before an administrative board." (*Brody* v. *Montalbano* (1978) 87 Cal.App.3d 725, 737 [151 Cal.Rptr. 206], italics added.)

The Wong defendants argue, and we agree, that their filing of an application for a FCC license did not give rise to an "action against another" within the meaning of the malicious prosecution tort. As is apparent from our foregoing discussion of FCC licensing law, an application for an FCC license—though it may have the effect of defeating a competitor's application—is not comparable to an accusatory or adversarial action against another. Even where the application leads to a comparative hearing, the hearing is not an action by one party against another but rather a weighing of the relative merits of two competitors.

"Unlike [a bipolar civil court action], which is concerned with adjudication of the private rights of litigants, a comparative licensing case has the interest of the public as its focus." (*Comuni-Centre Broadcasting, Inc.* v. *F.C.C., supra,* 856 F.2d at p. 1555 [affirmed administrative law judge's dismissal of an applicant from a comparative proceeding due to applicant's failure timely to file proposed findings of fact and conclusions of law].)

Plaintiff argues *Comuni-Centre* is distinguishable because it involved competing applications for a television station with no existing license. However, both new and renewal applicants must demonstrate that the grant or continuation of a license will serve the public interest. (47 U.S.C. §§ 307(a) [new], 307(c) [renewal]; *Citizens Communications Center* v. *F.C.C., supra,* 447 F.2d at p. 1207.)

Plaintiff asserts: "The FCC decision [] and the appeals therefore, attached to the complaint extensively describes the process of an FCC hearing and therein is clearly indicated that it constitutes an adversary proceeding . . . ." However, the decision merely compares the relative merits of the two mutually exclusive applications. Plaintiff fails to direct our attention to anything in the FCC decision to prove his point.

Plaintiff cites *Dixie Broadcasting Corp.* v. *Rivers* (1952) 209 Ga. 98 [70 S.E.2d 734], which held a malicious prosecution claim could arise from FCC proceedings because malicious prosecution applies to administrative proceedings. However, in *Dixie,* the defendant did not merely file an application for its own license; it filed a petition to revoke the plaintiff's license during the term of the license, accusing the licensee of misfeasance.[3] (*Id.* at pp. 737-738.)

Here, there was no similar accusatory action. The only document submitted to the FCC by the Wong defendants was the application for their own construction permit for the 106.5 frequency, which was available because plaintiff's license was expiring. Plaintiff concedes the Wongs' application made no accusations against plaintiff. Plaintiff nevertheless asserts the Wongs attempted to malign him and his business during the comparative hearing. However, the fact that the Wongs made statements against plaintiff during the proceedings does not mean that the proceedings themselves constituted an action against plaintiff, as required to support a malicious prosecution claim. Nor does a malicious motive convert the process into an "action against another."

---

[3]We express no view on whether a petition to revoke a license could give rise to a malicious prosecution action.

Plaintiff argues the facts of this case are more egregious than *Dixie* because in *Dixie* the petition to revoke was denied without a hearing but here plaintiff had to undergo hearing proceedings extending over a period of several years. However, that point may go to the question of damages but does not establish a basis for malicious prosecution liability.

We conclude the filing of an application for an FCC license does not give rise to a cause of action for malicious prosecution.[4]

### D.   *Abuse of Process*

■   Plaintiff contends the trial court erred in concluding that the complaint failed to state a cause of action for abuse of process. We disagree.

The complaint alleged: "Defendants misused the process of the F.C.C. in submitting a competing application as set forth herein above. [¶] . . . Defendants['] ulterior purpose and motive in so misusing the process as set forth herein was to obtain a collateral advantage over plaintiff." The complaint also alleged that defendants acted willfully, with wrongful intention, and caused plaintiff damage.

The trial court determined no cause of action was stated because the complaint alleged defendants' intent was to obtain a license for themselves, which was a proper purpose for filing an application. Plaintiff challenges this as error. Regardless of the validity of this ground, however, we agree with the Wong defendants that no cause of action was stated because the tort of abuse of process requires misuse of a *judicial* process, and the only conduct of which plaintiff complained was alleged misuse of the administrative process of the FCC.

"[T]he essence of the tort 'abuse of process' lies in the misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice." (*Meadows* v. *Bakersfield S. & L. Assn.* (1967) 250 Cal.App.2d 749, 753 [59 Cal.Rptr. 34]; see *Woodcourt II Limited* v. *McDonald Co.* (1981) 119 Cal.App.3d 245, 252 [173 Cal.Rptr. 836]; *Younger* v. *Solomon* (1974) 38 Cal.App.3d 289, 297 [113 Cal.Rptr. 113]; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 461, pp. 548-549.)

---

[4]We therefore need not address the Wong defendants' further arguments that (1) the FCC comparative hearing was initiated not by them but by the FCC itself or by plaintiff's filing of a renewal application, and (2) no triable issue exists as to malice. We also need not address the parties' arguments as to whether a malicious prosecution claim in state court would be preempted by federal law.

We have located no authority extending the tort of abuse of process to administrative proceedings. Application of the tort to administrative proceedings would not serve the purpose of the tort, which is to preserve the integrity of the court.

Plaintiff suggests the tort is not limited to judicial process because *Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94 [101 Cal.Rptr. 745, 496 P.2d 817] stated: " 'Process,' as used in the tort of 'abuse of process,' has never been limited to the strict sense of the term, but instead has been interpreted broadly to encompass the entire range of 'procedures' incident to litigation." (7 Cal.3d at p. 104, fn. 4.) However, *Barquis* continued: "This broad reach of the 'abuse of process' tort can be explained historically, since the tort evolved as a 'catch-all' category to cover improper uses of the *judicial* machinery that did not fit within the earlier established, but narrowly circumscribed, action of malicious prosecution." (*Ibid.*, italics added.) Thus, *Barquis* does not stand for the proposition that the tort extends beyond the realm of judicial process; it merely addresses what kinds of judicial process are covered. *Barquis* itself involved a collection agency filing court actions in an improper county pursuant to statutorily inadequate pleadings for the purpose of impairing its adversaries' ability to defend the court actions. (7 Cal.3d at pp. 97-98.)

Contrary to plaintiff's suggestion, we believe the foregoing authorities establish the limitation of the tort to *judicial* process.

Plaintiff appears to propose extension of the tort by arguing FCC proceedings are judicial in nature. However, although the FCC has "quasi-judicial" powers (*Dixie Broadcasting Corp.* v. *Rivers, supra,* 70 S.E.2d at p. 740), the FCC is still not a court.

Plaintiff contends "defendants appealed to the U.S. District Court and appeals are clearly subject to abuse of process." However, this contention departs from the pleading, which only alleged misuse of the FCC process. Moreover, plaintiff's cited authority does not support his position that the mere filing of an appeal in district court could support a cause of action for abuse of process. Thus, *Tellefsen* v. *Key System Transit Lines* (1961) 198 Cal.App.2d 611 [17 Cal.Rptr. 919], held that even though the tort could be applied to the appellate process, allegations of the mere filing of an appeal with malicious intent did not state an actionable misuse of process. (198 Cal.App.2d at p. 613.) Where the party had the right to file an appeal, the mere filing of the appeal was not enough; "there must be some act additional to the issuance of process, where the party is entitled to such process." (*Ibid.*) Thus, the mere taking of an appeal would not suffice in this case.

We conclude the complaint fails to state a cause of action for abuse of process because no actionable misuse of judicial process is involved.[5]

### E.  *Interference With Economic Relations*

Plaintiff contends the complaint stated a cause of action for the tort of interference with economic relations. We disagree.

The third cause of action of the complaint was labeled "Interference with Economic Relationship" and contained two paragraphs. The first paragraph did nothing more than incorporate by reference the allegations of the first two causes of action (that defendants filed a competing application for the 106.5 frequency and did so with malice in that the entity Wong Communications was a sham and was set up to give defendants a competitive advantage). The second paragraph merely alleged: "Said acts of defendants wrongfully interfered with plaintiff's business."

In their motion for summary judgment, the Wong defendants asserted the complaint failed to allege the elements of either an intentional or a negligent interference. The Wongs also asserted that if plaintiff was relying on his expectation of renewal of the FCC license, no cause of action was stated because that expectancy was not an actionable interest.

In his opposition to the motion for summary judgment, plaintiff did not respond to the question of the complaint's deficiencies but merely asserted the complaint's deficiencies did not matter because this was a motion for summary judgment, not a demurrer. Thus, plaintiff did not defend his pleading or seek leave to amend the complaint.

The trial court determined no cause of action was stated because the "expectation of a license renewal is simply an expectancy and is not actionable. See *Blank* v. *Kirw[a]n* (1985) 39 Cal.3d 311 [216 Cal.Rptr. 718, 703 P.2d 58]."

On appeal, plaintiff argues the trial court erred. However, we do not reach that contention, because plaintiff fails to defend his pleading or seek leave to amend his pleading in response to defendants' reassertion of its plainly meritorious argument that the complaint lacked necessary allegations as to the elements of intentional or negligent interference with economic relations.

"The tort of intentional or negligent interference with prospective economic advantage imposes liability for improper methods of disrupting or

---

[5]In light of our conclusion, we need not address the parties' further arguments regarding defendant's motives and First Amendment rights.

diverting the business relationship of another which fall outside the boundaries of fair competition. [Citation.]" (*Settimo Associates* v. *Environ Systems, Inc.* (1993) 14 Cal.App.4th 842, 845 [17 Cal.Rptr.2d 757].)

The tort of *negligent* interference with economic relationship arises only when the defendant owes the plaintiff a duty of care. (*J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799, 803 [157 Cal.Rptr. 407, 598 P.2d 60].) The complaint did not allege such a duty, nor could it, since it was plain that plaintiff and defendants were competitors. On appeal, plaintiff makes no argument on this issue.

■ The elements of a cause of action for *intentional* interference with contractual relationship or prospective economic advantage are: (1) the existence of a prospective business relationship advantageous to the plaintiff; (2) the defendant's knowledge of the existence of that relationship; (3) intentional acts by the defendant designed to disrupt the relationship; (4) actual causation; and (5) resulting damages. (*Institute of Veterinary Pathology, Inc.* v. *California Health Laboratories, Inc.* (1981) 116 Cal.App.3d 111, 126 [172 Cal.Rptr. 74].)

■ Plaintiff's complaint was plainly deficient. It contained no allegations as to the existence of any contract or prospective economic advantage, defendants' knowledge, intentional acts to disrupt the relationship, or damage resulting from the alleged interference.

On appeal, plaintiff again ignores the pleading's deficiencies except as to the first element. He thus argues only that the expectancy of renewal is an actionable prospective business relationship. It is apparent that plaintiff considers his third cause of action a throwaway claim. Since plaintiff has not bothered to assert he can plead the other elements of the cause of action, we need not address his argument.[6]

We conclude plaintiff's complaint fails to state a cause of action for interference with economic relationship.[7]

Thus, the complaint fails to state a cause of action for any of the three pleaded claims—malicious prosecution, abuse of process, and interference

---

[6]When a motion for summary judgment is in effect a motion for judgment on the pleadings, the court may give the plaintiff leave to amend to cure the deficiencies of the complaint. (*Hansra* v. *Superior Court* (1992) 7 Cal.App.4th 630, 647 [9 Cal.Rptr.2d 216]; *Hejmadi* v. *AMFAC, Inc.*, *supra*, 202 Cal.App.3d at p. 536.) Since plaintiff has not sought leave to amend and has not proposed any facts which could be alleged to cure the deficiencies of the complaint, we have no need to consider the matter further.

[7]We therefore need not address the Wong defendants' alternative argument that summary judgment was proper because their conduct fell under the "competitors' privilege."

with economic relationship. Accordingly, judgment was properly entered in favor of the Wong defendants.

## DISPOSITION

The judgment in favor of the Wong defendants is affirmed. Plaintiff's appeal as against the attorney defendants is dismissed. All defendants shall recover their costs on appeal.

Davis, J., and Scotland, J., concurred.

A petition for a rehearing was denied July 19, 1994, and appellant's petition for review by the Supreme Court was denied September 29, 1994.