Filed 5/20/16  Ebert v. Press  CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| VIRGINIA EBERT, | D068153 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00095315-CU-PO-CTL) |
| THELMA PRESS, Individually and as Trustee, etc., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Judgment dismissing defendant individually affirmed, appeal otherwise dismissed.

Law Office of Susan M. Goldbeck and Susan M. Goldbeck for Plaintiff and Appellant.

Koeller, Nebeker, Carlson & Haluck, Robert C. Carlson, Sharon A. Huerta and Scott A. Davis for Defendant and Respondent Thelma Press, and Nonparty and Respondent Travelers Property Casualty Insurance Company.

After a neighbor's tree fell in her yard, plaintiff Virginia Ebert (Ebert) sued the neighbor, defendant Thelma Press, individually (Press) and in her capacity as trustee of the living trust that owned the land on which the tree grew (Trustee) (together the Press defendants), for negligence, trespass and nuisance.  The trial court granted summary adjudication of the negligence and trespass causes of action and dismissed Press from the case before allowing the case to proceed to trial against Trustee.

Ebert appeals and argues the court erred by:  (1) dismissing Press, (2) granting summary adjudication as to the negligence and trespass causes of action, and (3) awarding sanctions against Ebert and her counsel as a result of a motion to quash a subpoena served on third party Travelers Property Casualty Insurance Company (Travelers).  The Press defendants and Travelers moved to dismiss the appeal in part, arguing the summary adjudication and sanctions orders are not appealable at this time in the absence of a final judgment.

We grant the motion to dismiss the appeal in part, declining to reach the sanction order and limiting our discussion of the summary adjudication orders to those issues properly raised in connection with an appeal from the judgment dismissing Press, and affirm the judgment dismissing Press.

FACTUAL AND PROCEDURAL BACKGROUND

Ebert owned and lived on property (the Ebert property) adjacent to property occupied by Press and owned by the Louis M. and Thelma Press Living Trust (the Press property).  In April 2011, a eucalyptus tree (Tree 1) growing on the Press property fell

2

onto the Ebert property. The tree was 80 to 100 years old, 117 feet tall, and weighed approximately 29 tons, and, when it fell, caused damage to Ebert's fence, garden boxes, landscaping and slope, diminution in the value of Ebert's property and emotional stress to Ebert. The following October, the Presses' insurance carrier paid for a tree care service to remove the fallen tree from Ebert's property. However, there was a second large eucalyptus tree (Tree 2) on the Press property from where its limbs continued to drop onto the Ebert property. Ebert asked the Press defendants to remove or prune Tree 2 but they refused to do so.

In April 2012, Ebert filed a complaint against the Press defendants.[1] In February 2013, Tree 2 was removed but part of the tree remained lying on the Press property in the canyon near Ebert's property. Thereafter, Ebert filed a first amended complaint (the FAC), alleging a cause of action for general negligence and four separate causes of action for "intentional tort" against the Press Defendants. The FAC does not specifically identify the intentional torts but appears to assert claims for trespass, private nuisance, and public nuisance related to Tree 1 and private nuisance related to Tree 2.

Before trial, the Press defendants filed a motion for summary judgment or summary adjudication, attaching a declaration from Robert W. Walton, Jr. (Walton), a certified and registered consulting arborist. In his declaration, Walton stated he inspected Tree 1 the month after it fell and concluded it fell because the root system buried beneath

---

[1]     The Complaint also asserted a single cause of action (fifth) against another neighbor but the court later dismissed that cause of action. That cause is not at issue on this appeal.

the soil was infected with brown cubicle rot. Walton concluded the decay could not have been detected from visual inspection of the tree before it fell and the rot would not have been apparent absent excavation of the soil around the tree's root system; something a reasonable person would not have done because doing so could destabilize the tree, causing it to fall.

Ebert opposed the motion, relying in large part on declarations from herself and two arborists, Ronald Matranga and Joseph Bileci, Jr. Ebert, although not an arborist or otherwise qualified as an expert, described her own inspection and observations of Tree 1. Matranga described his examination of Tree 1, which occurred over five months after it fell, and stated he observed indicia of decay but admitted he could not determine if that indicia was visible before the tree fell. Bileci, who never examined the tree himself, relied solely on the declarations of Walton, Ebert and Matranga, and concluded a professional arborist inspecting the tree before it fell likely would have recommended removal or further inspection via root collar excavation.

Meanwhile, nonparty Travelers moved to quash two subpoenas Ebert had served on it. The subpoenas sought the claim file related to Tree 1, documents related to Travelers's general procedures for handling claims, and documents related to the Presses' insurance policy, among other items, as well as the deposition of a person most knowledgeable from Travelers. Travelers argued the subpoenas were overbroad and constituted an abuse of discovery, and requested sanctions against Ebert. The court

4

granted the motion to quash and awarded Travelers $1,500 in sanctions for plaintiff's misuse of the Discovery Act.

The trial court then granted the Press defendants' motion for summary adjudication as to the causes of action for negligence and public nuisance. In finding the Press defendants were not negligent, the court relied on the declaration of Walton for the conclusion that no reasonable homeowner would have concluded the tree was diseased and likely to fall, found Matranga's declaration did not present a triable issue of fact, struck Bileci's declaration in its entirety but also found it did not present a triable issue of fact, and found Ebert had not established notice of the tree's diseased state or that the failure to act absent such notice constituted negligence. The court also struck several sentences related to trespass to timber statutes, finding the motion for summary adjudication of the second cause of action moot as a result, and denied the motion as to Ebert's cause of action for private nuisance. Accordingly, the court stated the case would proceed to trial on Ebert's causes of action for common law trespass as to Tree 1, common law nuisance as to Tree 1, and common law nuisance as to Tree 2.

The Press defendants filed a motion for reconsideration, arguing the FAC did not actually state a cause of action for common law trespass, as opposed to trespass to timber, and, to the extent the court was now construing the complaint to state such a cause of action, the court should grant summary adjudication in favor of the Press defendants as the court had previously found Tree 1 did not fall as a result of negligent or intentional conduct by the Press defendants. The court allowed the parties to provide supplemental

5

briefing on the common law trespass cause of action and, following the briefing and argument, granted summary adjudication as to the trespass cause of action as well.

Thereafter, the Press defendants listed Press's liability as an individual as a legal issue for the court to decide in the joint trial readiness conference report and argued in their trial brief that no liability remained against Press as an individual as a result of the court's previous orders. Ebert did not address this issue in her trial brief. The court raised the issue at the pretrial conference and asked Ebert's counsel for her position. The court heard argument, noted the prior summary adjudication ruling regarding negligence, and found no liability remained against Press because the trust, not Press, owned and controlled the two trees at issue. The court thereafter issued a judgment of dismissal as to Press.

The trial as to nuisance proceeded[2] and, during trial, Travelers produced certain documents Ebert had requested in the subpoenas. Ebert filed a motion for reconsideration of the prior sanctions order and Travelers opposed, arguing all of the documents produced by Travelers at trial had been previously produced as part of a third party adjuster's file. The court granted Ebert's motion and reduced the sanctions to 300 dollars.

---

[2] The jury found Press, as Trustee, liable for nuisance and awarded damages. However, a second portion of the trial, on abatement, was set for October and later stayed as a result of the present appeal. The court has not yet entered final judgment as between Ebert and Trustee.

ANALYSIS

I

*Motion to Dismiss*

We first address the motion to dismiss Press and the proper scope of issues on appeal with respect to the judgment dismissing her as an individual.

A

Pursuant to Code of Civil Procedure, section 904.1, subdivision (a)(1), an appeal may be taken from a final judgment. The "one final judgment" rule, a fundamental principle of appellate practice, prohibits appellate review of intermediate rulings until final resolution of the case. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697.) However, there is a recognized exception to the one judgment rule in cases with multiple parties—a judgment, such as a dismissal, which leaves no issue to be determined as to a particular party is appealable before entry of final judgment as to the remaining parties in the case. (See *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 437 [final judgment as to one defendant appealable in multiparty case].) The exception applies where a party brings an action against another party in multiple capacities and a judgment is entered disposing of all issues related to a party in one capacity. (See *First Security Bank of Cal. v. Paquet* (2002) 98 Cal.App.4th 468, 474-475 [judgment dismissing cross-complaint brought against individuals was appealable despite continued pendency of claims brought by the same individuals in their capacity as shareholders];

*Dominguez v. City of Alhambra* (1981) 118 Cal.App.3d 237 [appellant's capacity as estate administratix was a separate party for purposes of appeal].)

An order granting summary judgment or summary adjudication is not an appealable order. (*Stolz v. Wong Communications Limited Partnership* (1994) 25 Cal.App.4th 1811, 1816.) However, on appeal from a judgment of dismissal, the appellate court may review "any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . ." (Code Civ. Proc., § 906; *Jennings v. Marralle* (1994) 8 Cal.4th 121, 128; *Stolz,* at p. 1816.)

Here, the judgment of dismissal of Press as an individual is final as to Press and is therefore appealable. (See *Nguyen v. Calhoun, supra*, 105 Cal.App.4th at p. 437; *First Security Bank of Cal. v. Paquet, supra*, 98 Cal.App.4th at pp. 474-475.) Further, as the trial court relied on its prior summary adjudication orders when dismissing Press, the summary adjudication orders are reviewable on appeal from the judgment of dismissal to the extent they involve the merits or necessarily affect the judgment of dismissal of Press. (See *Stolz v. Wong Communications Limited Partnership, supra*, 25 Cal.App.4th at p. 1817.) We therefore review the summary adjudication orders but limit our discussion to the court's adjudication of causes of action alleged against Press.

B

We also consider the appealability of the sanctions order. Code of Civil Procedure, section 904.1 provides a statutory scheme for appeals from orders awarding

8

sanctions, allowing appeals from interlocutory orders directing payment of monetary sanctions, by either a party or an attorney for a party, only if the amount exceeds 5,000 dollars. (*Id.*, subd. (a)(11).) Sanction orders of 5,000 dollars or less may be reviewed on appeal by the party after entry of final judgment *in the main action*, or, at the discretion of the Court of Appeal, on a writ petition. (*Id.*, subd. (b), italics added.) Here, the sanctions order awards sanctions of only 300 dollars and is not appealable under the statute until entry of final judgment in the main action.

Ebert incorrectly asserts the sanctions order is nevertheless appealable as a postjudgment order under Code of Civil Procedure, section 904.1, subdivision (a)(2), as it was made after entry of the judgment dismissing Press. The purpose of subdivision (a)(2) is to prevent a situation in which an order is issued after a final judgment and is therefore not appealable because the judgment was already appealed or the time to appeal had lapsed. (*Ibid.*) Thus, despite the broad statutory language, not every postjudgment order is appealable. (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651.) To be appealable, a postjudgment order must satisfy two additional requirements: (1) the issue raised by appeal from the order must be different from those arising from the judgment, and (2) the order must affect the judgment or relate to it by enforcing it or staying its execution. (*Id.* at pp. 651-652; see *SCC Acquisitions, Inc. v. Superior Court* (2015) 243 Cal.App.4th 741, 748 [postjudgment orders that do not meet these requirements include orders preliminary to a later judgment that can be challenged by appeal of the later judgment].) Here, the sanctions order does not affect or relate to the

9

judgment dismissing Press and is, therefore, more appropriately raised on appeal following a final judgment in the main action, after all issues regarding the evidence have been resolved.

Ebert also asserts the sanctions order is immediately appealable as a collateral matter. An order is collateral and immediately appealable if it is substantially the same as a final judgment in an independent proceeding. (See *In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368.) Here, the court has already reduced the sanctions order once as a result of a motion for reconsideration unexpectedly arising out of conduct of the parties at trial, indicating the sanctions order is not collateral. Further developments in the case prior to final judgment may similarly reflect on the propriety of Ebert's discovery requests to Travelers and, thus, the court's order on sanctions. Allowing an appeal at this juncture would result in the type of costly and oppressive multiple appeals the single judgment rule attempts to avoid. (See *Griset v. Fair Political Practices Com., supra*, 25 Cal.4th at p. 697.)

Based on the foregoing, we grant the motion to dismiss the appeal in part and decline to address the sanctions order at this time. The appropriate time for an appeal of that order is after entry of final judgment in the main action as to all parties.

II

*The Judgment Dismissing Press as an Individual*

Having determined the proper scope of issues on appeal, we turn to the merits of the judgment dismissing Press as an individual. We first address the court's grant of

10

summary adjudication as to the negligence and trespass causes of action asserted against Press.

A

The court grants a motion for summary adjudication if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty. (Code Civ. Proc., § 437c, subd. (f)(1).) A defendant moving for summary adjudication bears the burden of establishing either a complete defense or that the plaintiff cannot establish one or more elements of a cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850; see Code Civ. Proc., § 437c, subd. (p).) The defendant may show the plaintiff cannot establish a particular element by presenting facts that, if undisputed, "conclusively negate" the element (*Aguilar,* at p. 853) or by demonstrating the plaintiff does not possess, and cannot reasonably obtain, evidence necessary to prove the element. (*Id.* at p. 855.) If the defendant does so, the burden shifts to the plaintiff to set forth facts demonstrating the existence of a triable issue of fact. (*Aguilar*, at p. 850.)

On appeal, we review summary adjudication orders de novo and are not bound by the trial court's stated reasons. (*Blue Shield of California Life & Health Ins. Co. v. Superior Court* (2011) 192 Cal.App.4th 727, 732.) We consider all of the evidence and inferences reasonably drawn from the evidence, and view the evidence in the light most favorable to the opposing party. (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 843.)

11

1. *Negligence*

To prove negligence, a plaintiff must establish duty, breach, causation, and damages. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) A duty of due care with regard to a natural condition on a piece of land can arise out of possession alone, as opposed to ownership of title. (*Sprecher v. Adamson Companies* (1981) 30 Cal.3d 358, 367-368.) A possessor of land has a duty to maintain the land in a reasonably safe condition. (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1156.) The test is whether the possessor acted as a reasonable person in his or her management of the property in view of the probability of injury to others. (*Alcaraz,* at p. 1156; *Rowland v. Christian* (1968) 69 Cal.2d 108, 118-119, abrogated in part by statute as stated in *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 722); *Alpert v. Villa Romano Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1330, fn. 9.)

Here, Ebert contends the court's summary adjudication was improper because the Press defendants' motion addressed only negligent inspection and not negligent maintenance but this is a distinction without a difference. Press's duty was to act reasonably in light of the potential risks. (*Alcaraz v. Vece, supra,* 14 Cal.4th at p. 1156 [defining the appropriate inquiry as whether possessor managed the property in her possession and control in a reasonable manner in view of the potential injury]; *Sprecher v. Adamson Companies, supra,* 30 Cal.3d at pp. 365, 372 [recognizing a single duty of reasonable care under the circumstances in the maintenance of property, including trees].) Applying the appropriate legal framework, Press argued she did not know, or have reason

to know, of the dangerous condition of the tree and, therefore, did not act, or fail to act, in a manner causing damage to Ebert's property. Expert arborist Walton examined Tree 1 and concluded a visual inspection of the tree before it fell would not have indicated the tree was in danger of falling and no reasonable layperson would have known there was a problem requiring him or her to act. Walton also concluded even an arboricultural expert would not have foreseen the risk the tree would fall as the fungus causing the tree's eventual demise would only have been discovered through an inherently dangerous, and therefore unreasonable, root excavation procedure.

The only evidence Ebert presented regarding inadequate maintenance was a single paragraph in the declaration of Ebert's arborist expert, Bileci, in which he noted a large open wound near the base of the fallen tree he saw in a photograph taken by Ebert and concluded "[s]uch fungal infection can often be prevented or minimized by facilitating healthy trees with proper care and maintenance, by minimizing wounds, by removing dead and diseased limbs, and proper pruning of dead branches." This statement does not indicate the actual cause of rot in Tree 1, what sort of maintenance a reasonable possessor would have taken, or that such reasonable maintenance would have prevented Tree 1 from becoming diseased or falling. Further, Bileci never examined the tree himself and it is unclear when Ebert took the photograph, where on the tree the wound appears and whether the wound was visible before the tree fell. Thus, even if Bileci's general, speculative statement is considered, it alone cannot support a claim of negligence against Press. (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196-197 [an issue

13

of fact cannot be created by speculation or conjecture, or cryptic, broadly phrased, and conclusory assertions].)  Considering the foregoing evidence, the court determined Ebert could not establish Press had actual or constructive notice Tree 1 posed any danger or that a reasonable possessor in Press's position would have taken any action that would have prevented the tree from falling.

Absent credible evidence a reasonable occupant in the same situation as Press would have been aware the tree presented a risk to others or would have otherwise taken some action that may have prevented the tree from falling, Ebert could not prove Press caused her damage by breaching a duty owed to her.  The trial court correctly granted Press's motion for summary adjudication of the negligence cause of action against her.

2.  *Common Law Trespass*

Common law trespass is an intentional tort and requires the trespass to be the result of a purposeful, negligent or reckless action or an extra hazardous activity undertaken by the defendant.  (*Wilson v. Interlake Steel Co.* (1982) 32 Cal.3d 229, 233.)  Where a cause of action for trespass is based on the continued presence of material on another's land, the defendant is liable only if he or she tortiously placed the material on the land in the first instance.  (*Newhall Land & Farming Co. v. Superior Court* (1993) 19 Cal.App.4th 334.)

Here, Ebert asserted trespass because of negligence, incorporating the negligence allegations into her second cause of action for trespass.  The trial court therefore properly based its summary adjudication of trespass on its finding that Press was not negligent.

14

On appeal, Ebert contends only that we should reverse the trial court's order on her trespass claim if we reverse the order on her negligence claim. As we conclude summary adjudication was proper as to the negligence claim asserted against Press, summary adjudication was also proper as to the trespass claim asserted against Press.

B

Having determined the court did not err in granting summary adjudication with respect to negligence and trespass, we now turn to the court's dismissal of Press as an individual. Ebert argues the trial court erred by denying her due process before dismissing Press and determining Press was not liable for nuisance as a matter of law.

1. *Ebert Was Afforded Due Process*

The court, rather than the jury, properly decides issues of pure law. (Evid. Code, § 310, subd. (a); Code Civ. Proc., §§ 589, 591, 592; *Estate of Torregano* (1960) 54 Cal.2d 234, 243.) Although a noticed motion is preferable to sua sponte action by the court, the trial court does have inherent powers to conduct hearings and formulate rules of procedure as justice may require. (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 267-268, 271.) When the court exercises such discretion, due process requires that all parties have the opportunity to be heard at a meaningful time and in a meaningful manner. (*Mathews v. Eldridge* (1976) 424 U.S. 319, 333.) The right to due process is flexible, however, and requires those procedural protections as the particular situation demands. (*Id.* at p. 334; *People v. Hansel* (1992) 1 Cal.4th 1211, 1219.) On appeal, we review issues of pure law and claims regarding procedural due process de novo.

15

(*Bostean v. Los Angeles Unified School Dist.* (1998) 63 Cal.App.4th 95, 107-108; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.)

Here, the parties submitted numerous briefs on the issues of negligence, trespass and nuisance, and Ebert was well aware of the court's summary adjudication rulings on negligence and trespass. The issue of Press's remaining individual liability was flagged as an issue for the court in the joint trial readiness report and argued as one of only three "disputed legal issues for court resolution" in Press's trial brief. Although Ebert neglected to address the issue in her own trial brief, she should have been aware of the issue and prepared to address it when the court raised it at the pre-hearing conference. Although Ebert's counsel was unable to cite specific cases, the court did provide her with an opportunity to be heard and she did state her position. She did not, however, raise a due process objection or ask the court to allow the parties to brief the issue. As Ebert had notice and an opportunity to be heard, the court did not violate her due process rights in ruling on the issue at the pretrial conference.

2. *No Cause of Action Remained Against Press*

A cause of action for nuisance requires conduct that directly and unreasonably interferes with or creates a condition that interferes with another's free use of his or her property. (Civ. Code, § 3479; *Lussier v. San Lorrenzo Valley Water Dist.* (1988) 206 Cal.App.3d 92, 103-104.) A plaintiff can state a cause of action for nuisance without asserting the defendant acted negligently, but when the cause of action for nuisance

16

asserts a failure to prevent the nuisance in the first instance, negligence is required. (*Id.* at p. 105; *City of Pasadena v. Superior Court* (2014) 228 Cal.App.4th 1228, 1237.)

The court determined Tree 1 did not fall because of the negligence of Press and the complaint, even as amended at the pretrial hearing, did not contain any allegation that Press personally acted intentionally or negligently with respect to Tree 2. As such, any claim for nuisance remaining against Press related only to Press's failure to remove Tree 2 or any remnants of either Tree 1 or Tree 2 from Ebert's property. But it is the owner of land, if anyone, and not the possessor, who is responsible for removing portions of his or her trees lying on another's property. (See *Mattos v. Mattos* (1958) 162 Cal.App.2d 41, 43; *Bonde v. Bishop* (1952) 112 Cal.App.2d 1, 6.) Press did not personally have any right or obligation to remove the trees and, thus, could not be liable for nuisance. As no cause of action remained for which she could be liable as a matter of law, the court properly dismissed her as an individual.

Ebert argues Press is personally liable under Probate Code sections 18001 and 18002, but those statutes explicitly state the trustee is personally liable only if the trustee is personally at fault. Here, we have already determined Press was not personally at fault for Tree 1 falling or parts of either tree remaining on Ebert's property. It was the trust, or Trustee acting on behalf of the trust, that was potentially responsible for the removal of trees and any action taken, or not taken, by Press in that regard was in her capacity as Trustee. Probate Code Sections 18001 and 18002 are not applicable.

Moreover, even if the court did err, any error was harmless beyond a reasonable doubt even under the more stringent federal standard expressed in *Chapman v. California* (1967) 386 U.S. 18, 24. Nothing in the record, or Ebert's arguments on appeal, indicates the verdict would have been any different had the causes of action for nuisance been asserted against both Press and Trustee, rather than only Trustee.

DISPOSITION

The judgment dismissing Thelma Press individually is affirmed. The appeal is otherwise dismissed. Respondents are awarded costs on appeal.

McDONALD, J.

WE CONCUR:

BENKE, Acting P. J.

HALLER, J.

18