CLAIRE GRAMANZ, Individually, and in Her Capacity as Trustee of the Claire Gramanz Living Trust U.T.D., 07/22/91, Appellant, v. BRENT GRAMANZ, ANISAC CORPORATION, a Nevada Corporation, and G & S ENTERPRISES INC., a Nevada Corporation, Respondents.

No. 25788

January 3, 1997                                    930 P.2d 753

[Rehearing denied November 21, 1997]

*Laura Wightman FitzSimmons*, Las Vegas, for Appellant.

*Lemons, Grundy & Eisenberg,* Reno, for Respondents.

# OPINION

*Per Curiam:*

## FACTS

Appellant Claire Gramanz ("Claire") and respondent Brent Gramanz ("Brent") were married in 1975, had three children together, and divorced in California in 1989.

During the marriage, Brent operated three retail souvenir shops in a building located in Las Vegas at 3235 Las Vegas Boulevard adjacent to the Desert Inn. These businesses had long-term commercial leases. In August 1987, a bank threatened foreclosure on the underlying property on which Brent was operating his shops.

On August 24, 1987, Brent and the property owner signed an agreement by which Brent helped the owner avoid foreclosure in exchange for a 25% ownership interest in the property. At the same time, Brent exercised options to extend the terms of all three leases until 2007. Brent and the owner signed these options. On September 24, 1987, the owner conveyed a deed for 25% interest in the real property to Brent and Claire as joint tenants. Brent and his attorney allegedly had an agreement that if the property was later sold at a profit, the attorney would receive a bonus fee.

In 1989, Brent and Claire's divorce was entered in California. However, the parties continued negotiating for resolution of property and child custody issues. In November 1990, the parties entered into a stipulation before the California court concerning the disposition of their property. The stipulation stated that it was a distribution of all property owned by the parties. Each party warranted that it did not own any other community property of any kind other than that listed in the stipulation. If such property were later discovered, it was to be divided equally. The only remaining questions at the time of the stipulation dealt with custody and visitation regarding the minor children, and with the value of certain properties and businesses which had been distributed to the parties. The stipulation was merged into the earlier judgment of dissolution.

The value of the 25% ownership in the Las Vegas property was not determined in the November 1990 stipulation, because the parties felt that the property was valuable and would be "far more [valuable] down the line" such that they could make a large profit on any sale. Accordingly, the property was placed in a limited partnership, with Brent as the controlling partner and Claire as a limited partner.

Pursuant to the November 1990 stipulation, Claire transferred all her rights, interest and shares in the Gramanz corporations, including Anisac Corporation ("Anisac"), and their assets, to Brent as his sole and separate property, with the value of Anisac to be divided equally, in exchange for Brent holding her harmless against any liabilities or obligations against the corporations. The stipulation did not mention the disposition of G & S Enterprises.

The final valuation of Anisac was reserved for future determination. The parties agreed that Anisac would be appraised by two CPAs, who would attempt to agree upon a value that would then be divided equally between the parties. On October 2, 1991, the parties filed a "Stipulation to Final Valuation of Anisac Corporation and Order" with the California Superior Court. That stipulation reflected the agreement of the parties, upon the valuation of their accountants, that Anisac stock would be valued at $300,000.

In the divorce proceedings, Claire received property and cash with a total net value of nearly $1,600,000 plus her 12.5% interest in the Las Vegas Boulevard property (for which she later received $400,000). Claire ultimately received approximately $2,000,000 in property and cash.

In 1993, ITT-Sheraton expressed interest in purchasing the Las Vegas Boulevard real property on which the stores were located. On July 13, 1993, Claire's attorney sent a letter to Brent's attorney asserting that the commercial leases on the Las Vegas property and the assets of G & S had never been distributed in the divorce. The letter stated that Claire "is making a claim to the lease rights and any proposed buy-out offers." Brent became concerned that Claire's assertion of a right to the proceeds of the sale to ITT-Sheraton might impair the sale. On August 10, 1993, Brent, Anisac and G & S filed a complaint for declaratory relief against Claire in the Eighth Judicial District Court, Clark County (the "Clark County case").

In Brent's complaint, he alleged that he and Claire were partners in the Las Vegas property, in which they each owned a 12.5% share, and that Brent was the controlling partner. He alleged that the partnership agreement gave him the unilateral right to enter into an agreement with a third party for the sale of the partnership interest in the real property. Brent further alleged that he had been awarded all interest and assets in both Anisac and G & S by the divorce and that, by virtue of that fact, he had also received all interest to the leasehold interests. Brent claimed that the three leases in the property were all assets of Anisac that had been set aside to him as his sole and separate property in the divorce stipulation. He alleged that Claire's assertion of an interest in the leases or input regarding the terms of a sale of the property would jeopardize the sale, and that absent declaratory relief, he would be inhibited from concluding the sale.

In early November 1993, the parties entered into two separate stipulations regarding the Nevada property and the Nevada corporations. First, on November 1, 1993, the parties filed a stipulation in the California divorce case. This stipulation recognized that there was a dispute over the rights and obligations of the parties regarding the Nevada corporations and the Nevada property. The stipulation then stated that the parties agreed that the California court "should defer the exercise of Jurisdiction over all the Nevada property and Corporations," and that "issues and property rights should be decided by the Clark County, Nevada Court."

A few days later, on November 9, 1993, the parties filed a stipulation in the Clark County case. The stipulation indicated that the parties would allow the closing and consummation of the ITT-Sheraton transaction involving the property at 3235 Las

Vegas Boulevard, and certain funds "shall be impounded under the jurisdiction of the Eighth Judicial District Court pending the outcome of this adversary proceeding." The stipulation ended with the following provision:

> 9.  The Parties have stipulated and agreed that the California Court should defer the exercise of Jurisdiction over all the Nevada property and Corporations, including the issues presently in dispute as raised by Petitioner, and that those issues and property rights should be decided by the Clark County, Nevada Court, exercising Jurisdiction, and pursuant to their Stipulation, all further proceedings in the California action have now been stayed.

As agreed in the November 9, 1993 stipulation, the transactions with ITT-Sheraton went forward. In June 1990, the entire fee simple ownership of the property was appraised at $5,715,000. The Gramanz 25% interest was eventually sold to ITT-Sheraton for $1,550,000. ITT-Sheraton paid $4,500,000 for the other 75% ownership interest. Thus, the 100% fee simple interest was sold to ITT-Sheraton for approximately $6,050,000, which was $300,000 more than the appraised value of the property in 1990. After paying off the mortgage on the property, Claire received approximately $400,000 for her 12.5% interest.

In addition to what he received for his fee interest, Brent received $6,450,000 by selling his Anisac stock to ITT-Sheraton. ITT-Sheraton bought the Anisac stock for the purpose of extinguishing the three leases. Because Claire claimed an interest in those proceeds, the funds were impounded until the dispute could be resolved.

The parties agreed that the two issues in the declaratory relief action—a bonus fee agreement made with Brent's attorney, and the leases on the property on Las Vegas Boulevard—would proceed to trial in Clark County. At trial Grant Anderson, one of the two CPAs hired to appraise Anisac when Brent and Claire divorced, testified that he utilized an "excess earnings method" to arrive at a value of $221,500 for Anisac. Anderson admitted that he did not look at the leasehold interests individually, but "looked at the value of the business as a whole which would encompass all assets of the business." He stated that the other CPA used a different method to appraise Anisac, but also valued it as a whole rather than by its individual assets. On cross-examination, Anderson testified that he did not recall receiving any leases with the documents with which he performed the valuations. He also stated that he did business valuations, but was not qualified to appraise real estate. The leases were reflected in his appraisal only to the extent that they may have been reflected in the business's income statements as "bargain leases."

Gary Kent, a real estate appraiser, testified on Claire's behalf. Kent had prepared an appraisal report of the real property in June 1990. He testified that he did not do an independent valuation of the leases, partly because they appeared not to be "arm's length" transactions.

The district court held that Claire had no right, title or interest to the $6,450,000 in proceeds from the sale of the leases, and that Claire was liable for payment of a bonus fee to Brent's attorney.

## DISCUSSION

### Jurisdiction

Claire contends that the district court abused its discretion in exercising jurisdiction over the declaratory relief action. Claire contends that at the time the declaratory judgment complaint was filed, the dissolution proceedings between the parties in California had not been concluded and thus, it was improper for the district court to entertain the declaratory relief action.

Claire's assertion that the same issues were being litigated in California at the time the declaratory relief action was instituted, or when the district court entered its judgment, is without factual basis. The stipulations filed in California Superior Court appeared to make a final distribution of all property owned by the parties. Every issue as to the distribution and valuation of property was believed to have been fully resolved in the California divorce case as of October 2, 1991, nearly two years before the declaratory relief action was filed in August 1993. Brent never received any complaints about the property distribution from Claire or her attorneys between the filing of a stipulation in October 1991 and the receipt of Claire's lawyer's letter in July 1993. During that time no legal proceedings were instituted in California or elsewhere regarding the distribution.

On October 15, 1993, two months after Brent filed the declaratory relief action, Claire's attorney filed a motion in the California divorce case. However, three days later, Claire signed a stipulation in which she agreed that the California court should defer the exercise of jurisdiction over all the Nevada properties and corporations, and that those issues and property rights should be decided by the court in Clark County. Accordingly, we conclude that the district court did not abuse its discretion in exercising jurisdiction over the declaratory relief action as such assumption of jurisdiction did not interfere with any matters pending before the California courts at the time.

Claire also contends that because she signed a stipulation agreeing to the sale of Brent's businesses to ITT-Sheraton, with

the funds from the sale to be placed in a Clark County escrow account, the district court abused its discretion by going forward with the declaratory relief action because, as of November 9, 1993, no conduct of Claire's jeopardized the sale to ITT-Sheraton.

Claire's willingness to acquiesce in the ITT-Sheraton transaction did not resolve the dispute regarding the proceeds from the transaction and Claire's alleged liability for a portion of an alleged bonus fee agreement. Each party was asserting a claim, interest and right to the proceeds of the ITT-Sheraton transaction. Therefore, the district court did not abuse its discretion in exercising jurisdiction over the declaratory relief action after the sale to ITT-Sheraton.

## Valuation of the leases

Claire contends that there is no substantial evidence to support the district court's finding that the accountants included the value of the three commercial leases in their agreed upon valuation of Anisac stock. It is undisputed that the leases claimed to be assets of Anisac were not considered individually. Brent's accountant testified that he was qualified to do business valuations, but was not a real estate appraiser. When valuating Anisac, he did not remember having the leases to work with and did not have the leases in his file. He had no understanding of the specific nature of the leases, including their duration. He also had no information as to whether the leases favored the lessee or the lessor, nor any information as to how many leases Anisac held. He conceded that he did not review any lease in the course of valuing Anisac, and that when he explained that the ''lease'' had been a factor in his excess earnings approach to its valuation, what he had really been talking about was the ''rent expense.''

Claire's appraiser, Gary Kent, testified that typically, the value of a lease would not have been captured in a business valuation and that a lease has a value separate and apart from the value of the business as an ongoing concern. Kent also testified that in 1990, he prepared an appraisal report that did not include a valuation of the three leases because the transaction between lessor and lessee did not appear, in his opinion, to be at arm's length. Also before the court was a letter from one of the CPAs to the lawyers in the California dissolution proceedings, dated January 4, 1990. That letter stated that ''we have not attempted to place a value on leasehold interests where the rent might be below market.''

Although there is some evidence that the leases were mentioned during the divorce proceedings, when the parties stipu-

lated to resolve their dispute regarding the valuation of Anisac, the accountants did not value the leases except as part of the going business. Therefore, we conclude that there was no substantial evidence to support the district court's finding that the three leases were among the assets valued by the accountants.

The November 8, 1990, partial stipulation in the California divorce proceedings states that the community assets would be divided equally and interpreted under and in accordance with the laws of California. The basic agreement and expectation of the parties was that their assets would be divided equally; however, the assets were not divided equally because three long-term commercial leases of substantial independent value were omitted from the valuation of the businesses.

In entering into the stipulation regarding valuation of the businesses, it appears that both parties were unaware of the leases' value separate and apart from the businesses. In the lower court proceeding, Brent testified that at the time of the divorce, he wanted the leases so that he could run the businesses. He further testified that he did not realize that the leases had a value if he agreed to cancel them until his negotiations with ITT-Sheraton. Accordingly, the parties entered into the stipulation as to the valuation based upon the mistaken fact that the leases had no value apart from being assets of an ongoing business.

"Mutual mistake occurs when both parties, at the time of contracting, share a misconception about a vital fact upon which they based their bargain." General Motors v. Jackson, 111 Nev. 1026, 1032, 900 P.2d 345, 349 (1995) (citation omitted). "[A] mutual mistake is a basis for an equitable rescission of a contract." Tarrant v. Monson, 96 Nev. 844, 845, 619 P.2d 1210, 1211 (1980). Here, both parties apparently mistakenly believed that the leases had no independent value apart from their value as assets of an ongoing business, when in fact, the optimal value of the leases was as a nuisance for which ITT-Sheraton would be willing to pay $6,450,000. The stipulation as to the valuation of the Gramanz's businesses was entered into by the parties based upon a mutual mistake, and did not result in an equitable division of the community property.

The November 8, 1990 partial stipulation makes clear that the parties intended to divide their assets equally. Under California law, when an item of community property is not awarded in dissolution proceedings, a spouse has a right to a judicial determination of her interest in the property. See Bowman v. Bowman, 217 Cal. Rptr. 174, 179 (Cal. App. 1985). In the interim, the parties are considered tenants in common of the property. Henn v. Henn, 161 Cal. Rptr. 502, 505 (Cal. 1980). Here, actual

division of the parties' community property was not in accordance with their agreement to divide their assets equally. The value of the three leases was not considered in the previous dissolution proceedings. Thus, Claire retains an interest in the three leases, which are missed assets subject to division as omitted assets. Accordingly, we reverse the decision of the district court and remand for a determination of Claire's interest in the three leases.

*The oral bonus fee agreement*

When the owner of the real property on Las Vegas Boulevard started having difficulty paying his debt to a bank, the bank threatened foreclosure on the property. Because of the threatened foreclosure, Brent retained attorney Jason Landess ("Landess") to secure the Gift Emporium property and to obtain further leases, if possible. According to Brent, Brent and Landess orally agreed that if Landess could negotiate an ownership interest in the property for Brent and Claire, and if Brent and Claire ever sold the property at a profit, Landess would receive a bonus fee, "10 to 15 percent of the gross profits depending upon the terms and conditions of the sale." According to Brent, Claire was fully aware of the oral bonus fee agreement, was present when Brent and Landess entered into the agreement, indicated her acquiescence in the agreement, and did not object to the agreement. Claire's trial counsel conceded that the bonus fee agreement actually existed. Claire's counsel stated, in essence, that the only issue was whether Claire shared in the liability for the bonus fee.

The property was sold and Brent became liable for the bonus fee agreement. Brent claimed before the district court that Claire shared half of the liability. The district court found and concluded that Claire was liable for her share under the agreement.[1]

Claire claims that the district court erred in finding and concluding that Claire was obligated to reimburse Brent under the bonus fee agreement.

We conclude that substantial evidence supports the district court's finding that Claire had acquiesced in the oral bonus fee agreement entered into between Brent and attorney Landess, calling for a bonus fee to be paid to Landess upon the sale of the Gramanz 25% ownership interest in the real property. Claire never denied the bonus fee agreement existed, and Brent testified that the bonus fee agreement had been discussed between Brent

[1]The bonus fee agreement provided for Landess to receive 10% to 15% of the net proceeds of the sale of the property. However, by stipulation of the parties, the percentage was reduced to 8%.

and Claire, with Claire being fully aware of it; Claire indicated her agreement or acquiescence in the bonus fee agreement; and Claire did not object to the agreement. Claire signed a special power of attorney for the express purpose of enabling Landess to secure a refinance loan from Nevada State Bank. The loan's purpose was to facilitate the acquisition of her ownership interest in the real property that she agreed to sell to ITT-Sheraton for a substantial profit. Thus, Claire benefitted from and used Landess' services.

However, in the California stipulation allocating community property and debts on reserved issues, the parties warranted to one another that there were no obligations "on which the other party is or may become liable or an obligation that could be enforced at any time against an asset held . . . under this stipulation . . . *except as expressly authorized by this stipulation,* by subsequent stipulation between the parties, or by order of a court of competent jurisdiction." Since the bonus fee agreement was not mentioned in the stipulation, Claire contends it violates the warranty and cannot be enforced against her.

Nevertheless, Claire fails to recognize that the stipulation does allow an unnamed obligation to be enforced "by order of a court of competent jurisdiction." Given the evidence that Claire knew of and acquiesced in the agreement and the fact that the stipulation provided that a court of competent jurisdiction, in this case the Nevada district court, could enforce an unnamed obligation, Claire's argument lacks merit.

With respect to the bonus fee agreement, Claire's only potentially meritorious legal arguments relate to alleged violations of various Nevada Supreme Court rules. These contentions were never raised in the district court, and Claire is raising the contentions for the first time on appeal. As such, these contentions need not be considered by this court. Laird v. State of Nev. Pub. Emp. Ret. Bd., 98 Nev. 42, 46, 639 P.2d 1171, 1173 (1982). Furthermore, although these Supreme Court Rule provisions may possibly have been a defense if *attorney Landess* had sued Brent and Claire directly for the contingent fee, this was not a suit by Landess against Brent and Claire. Instead, Brent and Claire admitted the existence of the bonus fee agreement and *Brent* attempted to obtain *reimbursement* for Claire's half of the obligation. Moreover, it is far from clear that Nevada law, rather than California law, would control the issue in any event. We conclude that Claire's argument lacks merit.

## CONCLUSION

The district court did not abuse its discretion in exercising jurisdiction over the declaratory relief action. There is substantial

evidence to support the district court's finding that Claire was liable for the bonus fee agreement entered into between Brent and his attorney and therefore the judgment against Claire for payment of a bonus fee to Brent's attorney is affirmed.

However, the district court erred in finding that the three leases were appraised at the time of the dissolution proceedings. Because they were not, they are omitted community assets. Accordingly, we reverse the judgment of the district court and remand the case to the district court for a determination of Claire's interest in the leases.[2]

---

[2]The Honorable Robert E. Rose, Justice, voluntarily recused himself from participation in this appeal.