**131 Nev., Advance Opinion 69**

IN THE SUPREME COURT OF THE STATE OF NEVADA

LAND BARON INVESTMENTS, INC., A NEVADA CORPORATION; MICHAEL CHERNINE, A TRUSTEE OF THE MISHA TRUST; AND ROBERT BLACK, JR., TRUSTEE OF THE BLACKBUSH FAMILY TRUST,
Appellants,
vs.
BONNIE SPRINGS FAMILY LIMITED PARTNERSHIP, A NEVADA LIMITED PARTNERSHIP; BONNIE SPRINGS MANAGEMENT COMPANY, A NEVADA LIMITED LIABILITY CORPORATION; ALAN LEVINSON, AN INDIVIDUAL; BONNIE LEVINSON, AN INDIVIDUAL; AND APRIL BOONE, AN INDIVIDUAL,
Respondents.

No. 59687

**FILED**

SEP 17 2015


TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

Appeal from a district court judgment in a tort and real property contract action. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Kathleen E. Delaney, and Gloria Sturman, Judges.

*Affirmed in part and reversed in part.*

Cotton, Driggs, Walch, Holley, Woloson & Thompson and John H. Cotton and Christopher G. Rigler, Las Vegas,
for Appellants.

Greenberg Traurig, LLP, and Tyler R. Andrews and Philip M. Hymanson, Las Vegas,
for Respondents.

15-28163

Darren J. Welsh, Chtd., and Darren J. Welsh, Las Vegas,
for Amicus Curiae Prudential Americana Group, Realtors.

---

BEFORE HARDESTY, C.J., PARRAGUIRRE and CHERRY, JJ.

*OPINION*

By the Court, HARDESTY, C.J.:

This appeal arises from a failed land sale contract and raises three issues of first impression. First, we must consider whether a mutual mistake will provide a ground for rescission where one of the parties bears the risk of mistake. Second, we must determine whether an abuse of process claim may be supported by a complaint to an administrative agency instead of one involving a legal process. Finally, we consider whether a nuisance claim seeking to recover only emotional distress damages requires proof of physical harm.

In addressing the first issue, we adopt the Restatement (Second) of Contracts § 154(b) (1981), which provides that a party bears the risk when "he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." In this, we reject mutual mistake as a basis for rescission. We also reject the assertions that an abuse of process claim may be supported by a complaint to an administrative agency or that a nuisance claim seeking only emotional distress damages must be supported by proof of physical harm. Accordingly, we affirm in part and reverse in part the district court's orders and judgment.

## FACTS

*Factual background*

In 2004, appellants Land Baron Investments, Inc., Michael Chernine, and Robert Black, Jr. (collectively, Land Baron), contracted to purchase land for $17,190,000 from respondents Bonnie Springs Family Limited Partnership, Bonnie Springs Management Company, Alan Levinson, Bonnie Levinson, and April Boone (collectively, Bonnie Springs) for the express purpose of building a subdivision. The property lies next to the Bonnie Springs Ranch, beyond the outskirts of Las Vegas and is surrounded largely by undeveloped land.

Prior to signing the purchase agreement, Land Baron verified that Bonnie Springs had title to the property but did not inquire into water or access rights or do any other due diligence. Land Baron drafted the purchase agreement, which stated that Bonnie Springs would allow Land Baron to use some of its treated wastewater for landscaping but did not mention access or water rights or make the contract contingent upon its ability to secure access, water, or any other utility necessary for the planned subdivision. Immediately after signing the agreement and while the sale was pending, Land Baron also began listing and relisting the property for sale, first as a single piece of property and then as separate parcels. However, obtaining access and water proved to be difficult, and beginning in December 2004, the parties amended the purchase agreement five times to extend the escrow period, with Land Baron paying a nonrefundable fee of $50,000 for each extension.

The property is flanked by two gravel roads, Los Loros Lane and Gunfighter Lane, both of which overlap or border Federal Bureau of Land Management (BLM) land. Clark County informed Land Baron it would not approve either road as access into the proposed subdivision

SUPREME COURT
OF
NEVADA

(O) 1947A

3

unless the road was widened and paved. After further researching the issue, Land Baron discovered that Gunfighter Lane could not be paved or widened because a right-of-way[1] would not allow it and that Los Loros Lane[2] likewise could not be paved or widened because it was on National Conservation Land and use of that road could constitute a trespass.

In September 2005, Land Baron began a search for water rights for the subject property. An attempt to buy existing water rights from another owner in the area failed because the rights were not in the same water basin. Land Baron was unable to find a viable option for obtaining water rights from nearby water sources and was unable to bring in water by a pipeline from another development. Land Baron asked Bonnie Springs if it would be willing to share its commercial water rights from the Bonnie Springs Ranch, but Bonnie Springs informed Land Baron that it could not allow its commercial water to be used in the residential development. Despite these issues, Land Baron never attempted to amend the language of the agreement with Bonnie Springs to address concerns with access or water.

The parties met in August 2007 to discuss the access and water rights issues. Land Baron informed Bonnie Springs that, because the property would likely need to be sold as a single parcel rather than as

---

[1]The BLM informed Land Baron that Gunfighter Lane was known as an "R.S. 2477 right-of-way" road. An employee from Clark County Development Services indicated that R.S. 2477 roads are roads across BLM land that have been adopted and maintained by the county as public roads but that cannot be altered from their original condition in any way.

[2]At the time of this appeal, Land Baron's application with the BLM to widen and pave Los Loros Lane was still pending approval.

individual lots in a subdivision, its value was greatly reduced. Following this meeting, Land Baron failed to make a payment to extend the escrow period through September 2007. On September 26, 2007, Bonnie Springs notified Land Baron that it was in breach and that Bonnie Springs was terminating escrow and keeping the deposits as liquidated damages. The next day, Bonnie Springs notified the title company of Land Baron's breach and requested that escrow be terminated.

Subsequent negotiations proved unsuccessful, and Land Baron filed a citizen's complaint with the Clark County Commissioner's office alleging that there were multiple county code violations on the Bonnie Springs Ranch. The complaints were based on investigations allegedly performed at Bonnie Springs Ranch by individuals it hired to search for code violations. These investigators allegedly found horses that had been electrocuted or infected with West Nile virus; turtles in the petting zoo that were infected with salmonella; licensing issues with the motel and business; code violations with the walkways, handrails, restrooms, shade structures, electrical wiring, and stairways; and other health, waste, and zoning issues. As a result, the county commissioner and multiple state and local regulatory agencies performed a large-scale inspection of the Bonnie Springs Ranch during business hours, when guests and school children were present. Officials from each county office arrived at the ranch in police vehicles that had lights flashing. No violations were found on the Bonnie Springs Ranch.

*Procedural background*

The same month it filed the citizen's complaint, Land Baron also filed a complaint against Bonnie Springs in district court, asserting claims for breach of contract, breach of the implied covenant of good faith

and fair dealing, intentional misrepresentation and nondisclosure, negligent misrepresentation, rescission based on mutual mistake, rescission based on unilateral mistake, rescission based on failure of consideration, and rescission based on fraud in the inducement. All of the claims centered on Land Baron's difficulty obtaining access and water rights for the subject property. Bonnie Springs counterclaimed for breach of contract, abuse of process, nuisance, fraudulent misrepresentation, intentional interference with contractual relations, and slander of title.

Several summary judgment motions were filed. Of note, Bonnie Springs filed a motion for summary judgment on the ground that it had no legal or contractual duty to provide or secure water rights for the property. And Land Baron filed a motion for summary judgment to confirm its right to rescind the contract based on mutual mistake.

The district court granted Bonnie Springs' motion for summary judgment on the water rights issues. It found that Bonnie Springs had no contractual duty to provide notice of water rights issues or to help secure water rights for the subject property, and that the burden was on Land Baron to secure water rights.

The district court then denied Land Baron's motion for summary judgment regarding mutual mistake. The court found that there was no mutual mistake because the parties did not know, at the time of the agreement, whether there were sufficient access and water rights to support a subdivision on the property, and it assigned the risk of that mistake to Land Baron. Finally, the district court granted Land Baron's second summary judgment motion dismissing Bonnie Springs' intentional interference with contractual relations and fraudulent misrepresentation claims because it found that there were no remaining

factual issues. However, it denied the motion as to Bonnie Springs' counterclaims for breach of contract, abuse of process, nuisance, and slander of title because it found that factual issues remained.

The parties proceeded to trial on Bonnie Springs' remaining counterclaims for abuse of process and nuisance.[3] Prior to closing arguments, Land Baron made a motion for a directed verdict, arguing that Bonnie Springs had failed to satisfy the elements of each claim and had failed to prove the physical harm necessary to support emotional distress damages under the nuisance claim. The district court denied the motion.[4]

The jury returned a unanimous verdict for Bonnie Springs on its nuisance and abuse of process counterclaims, awarding Bonnie Springs $1,250,000 as compensatory damages for its abuse of process counterclaim and $350,000 as compensatory damages for its nuisance counterclaim. The jury awarded Bonnie Springs an additional $1,512,500 in punitive damages on the abuse of process counterclaim and an additional $762,500 in punitive damages on the nuisance counterclaim.

Land Baron moved for a mistrial. It argued, among other things, that emotional distress damages may not be awarded on a

---

[3]The parties also went to trial on Bonnie Springs' breach of contract and slander of title counterclaims. Bonnie Springs filed a separate trial brief seeking judicial determination in its favor on the breach of contract counterclaim, which the district court granted. The district court also granted Land Baron's motion for a directed verdict on the slander of title counterclaim, and the parties do not dispute either ruling on appeal.

[4]The motion was brought on behalf of three parties: appellants Michael Chernine, Robert Black, and Land Baron. The motion was granted as to Chernine but denied as to the other parties. The parties do not appeal the grant in favor of Chernine.

nuisance or abuse of process claim absent proof of physical harm. The district court denied the motion, finding that a party did not need to prove physical harm in order to recover emotional distress damages for nuisance and abuse of process claims in Nevada. Judgment on the jury verdict, including an award of attorney fees and costs in favor of Bonnie Springs, was entered. After, Land Baron moved for reconsideration, which the district court denied.

Land Baron now appeals.

## DISCUSSION

On appeal, the parties dispute whether the district court erred in denying Land Baron's motion for summary judgment on its rescission claim and granting Bonnie Springs' motion for summary judgment on Land Baron's misrepresentation and nondisclosure claims. Land Baron also argues that the district court improperly denied its motions for a directed verdict on Bonnie Springs' abuse of process and nuisance claims.

We review de novo the grant or denial of summary judgment. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005); *see also* NRCP 56(c). Summary judgment should be granted when the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact remaining in the case, and where the moving party is entitled to judgment as a matter of law. *Id.* at 729, 255 P.3d at 1029. In reviewing a ruling for or against a directed verdict, this court applies the same standard as the trial court, viewing the evidence in the light most favorable "'to the party against whom the motion is made.'" *M.C. Multi-Family Dev., LLC v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 910, 193 P.3d 536, 542 (2008) (quoting *Bliss v. DePrang*, 81 Nev. 599, 601, 407 P.2d 726, 727 (1965)).

*The district court did not err in denying Land Baron's motion for summary judgment on its mutual mistake rescission claim*

Land Baron argues that it was entitled to summary judgment on its rescission claim because both Land Baron and Bonnie Springs mistakenly believed there would be sufficient access and water rights for a subdivision on the property, giving rise to a mutual mistake that would render the contract voidable.

A contract may be rescinded on the basis of mutual mistake "'when both parties, at the time of contracting, share a misconception about a vital fact upon which they based their bargain.'" *Gramanz v. Gramanz*, 113 Nev. 1, 8, 930 P.2d 753, 758 (1997) (quoting *Gen. Motors v. Jackson*, 111 Nev. 1026, 1032, 900 P.2d 345, 349 (1995)). However, mutual mistake will not provide grounds for rescission where a party bears the risk of mistake. Restatement (Second) of Contracts §§ 152(1), 154(b), (c) (1981). If the party is aware at the time he enters into the contract "that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient," that party will bear the risk. Restatement (Second) of Contracts § 154(b) (1981). Moreover, if the risk is reasonably foreseeable and yet the contract fails to account for that risk, a court may infer that the party assumed that risk. *United States v. Winstar Corp.*, 518 U.S. 839, 905-06 (1996) (noting that in considering if a risk is foreseeable in a regulatory setting, absent a specific contract provision, the party assumes the risk); *see also Tarrant v. Monson*, 96 Nev. 844, 845-46, 619 P.2d 1210, 1211 (1980) ("One who is uncertain assumes the risk that the facts will turn out unfavorably to his interests," and where the party bargains "with conscious uncertainty," there cannot be mutual mistake). The party also bears the risk of mistake if the court allocates that risk to the party on the ground

Supreme Court
of
Nevada

(O) 1947A

that to do so is reasonable under the circumstances. Restatement (Second) of Contracts § 154(c) (1981).

Here, we need not determine whether Land Baron and Bonnie Springs shared a mistaken assumption about the certainty of procuring access and water rights because Land Baron bore the risk of mistake, foreclosing any possibility of rescinding the contract based on a mutual mistake. Land Baron is a sophisticated and experienced land buyer and developer, and in this instance, it contracted to purchase property that was well beyond the outskirts of Las Vegas, surrounded by land that was mostly undeveloped, flanked by dirt roads, and only a few minutes away from Red Rock Canyon, a well-known conservation area. Land Baron also drafted the contract and its amendments. Yet, despite including a section for contingencies, Land Baron failed to include language to address the possibilities that a narrow gravel road may not provide sufficient access to a subdivision, or that water may not be available to support a neighborhood complete with large homes and horse pastures. At best, this was a significant oversight for this type of project, and it can be fairly inferred that by failing to provide for such contingencies, Land Baron assumed the risk of mistake as to these issues. *Winstar Corp.*, 518 U.S. at 906.

Land Baron argues that Bonnie Springs assured it that water, at least, would not be a problem. However, Land Baron points to no evidence (as opposed to Land Baron's assertions) that Bonnie Springs ever actually made such a statement and thus fails to show a genuine issue of material fact. Rather, the record indicates that Land Baron entered into

the contract without conducting any due diligence,[5] hoping that it could procure water, access, and any other utility necessary to obtain development permits. A hope that things will work out is not the same as a reasonable belief in a set of facts, and Land Baron assumed the risk by proceeding with the contract despite having limited knowledge of the actual conditions as to water and access. Thus, rescission is not appropriate on grounds of mutual mistake.[6] The district court did not err in granting summary judgment on Land Baron's rescission claims.

Land Baron argues that Bonnie Springs misrepresented, either intentionally or negligently, Land Baron's ability to obtain access or water rights. Specifically, it alleges that Bonnie Springs knew Los Loros Lane was on BLM land and had previously dealt with the BLM regarding land use issues on the surrounding property, and that Bonnie Springs knew Land Baron would not be able to get water rights for the subdivision and had represented to Land Baron that Bonnie Springs would provide water. It asserts that genuine issues of material fact remain and that the district court erred in dismissing these claims on summary judgment.

At the threshold, to establish a claim for either intentional or negligent misrepresentation, Land Baron must show that Bonnie Springs

---

[5]Land Baron admitted that the only step it took was to ask a friend of the corporation whether Bonnie Springs actually held title to the property.

[6]Because we conclude that Land Baron was not entitled to rescind the contract on the basis of mutual mistake, we do not address Bonnie Springs' arguments that Land Baron is precluded from seeking rescission because (1) the doctrine of unclean hands precludes equitable relief, and (2) Land Baron failed to seek rescission within a reasonable time.

supplied Land Baron with false information. *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 446-47, 449, 956 P.2d 1382, 1386-87 (1998). Summary judgment is appropriate on either of these claims if Land Baron has not provided evidence of this essential element. *Id.* at 447, 956 P.2d at 1386. Here, Land Baron has provided no evidence that Bonnie Springs ever represented that there would be no impediment to gaining access for a subdivision via either Los Loros or Gunfighter Lanes, or that Bonnie Springs had stated that it would supply the property with water. Because the record does not indicate that Bonnie Springs ever misrepresented any facts regarding access or water to Land Baron, summary judgment was appropriate on the misrepresentation claims.

*The district court did not err in granting Bonnie Springs' motion for summary judgment on Land Baron's nondisclosure claim*

Land Baron next argues that Bonnie Springs knew, and did not disclose, that the property could not be supplied with adequate water and that both Los Loros and Gunfighter Lanes were on BLM land, giving rise to a claim for nondisclosure. Nondisclosure arises where a seller is aware of materially adverse facts that "could not be discovered by the buyer" after diligent inquiry. *Mackintosh v. Jack Matthews & Co.*, 109 Nev. 628, 633, 855 P.2d 549, 552 (1993). "[W]hen the defect is patent and obvious, and when the buyer and seller have equal opportunities of knowledge," a seller cannot be liable for nondisclosure. *Collins v. Burns*, 103 Nev. 394, 397, 741 P.2d 819, 821 (1987). Liability for nondisclosure is generally not imposed where the buyer either knew of or could have discovered the defects prior to the purchase. *Mitchell v. Skubiak*, 618 N.E.2d 1013, 1017 (Ill. App. Ct. 1993).

The record makes clear that Land Baron could have, and did, discover the facts surrounding the difficulty or impossibility of obtaining

sufficient water and access for a subdivision on the property. Those defects arose from government regulations, were public knowledge, and were available to anyone upon inquiry. Thus, even if Bonnie Springs had known about these facts and not disclosed them, there would still be no viable nondisclosure claim because the facts were discoverable and Land Baron had an "equal opportunit[y]" to discover, and did discover, those facts before closing. *Collins*, 103 Nev. at 397, 741 P.2d at 821. We also note that the record shows that Bonnie Springs was not aware, prior to signing the contract, that Land Baron would be unable to obtain water rights or that neither Los Loros Lane nor Gunfighter Lane would provide suitable access.[7] Moreover, water rights are public information that can be accessed through the Nevada District of Water Resources' (NDWR) website, and Black testified that Land Baron, through its engineering firm, was in the best position to know how much water was going to be needed for the proposed subdivision and whether it would be possible to procure that amount of water. Also, Land Baron was aware that it would need to obtain access approval across BLM land, as is evidenced by its

---

[7]Alan Levinson and April Boone both testified that they were not aware of these issues prior to signing the agreement, and that they had never attempted to widen or pave the roads themselves. Although there is evidence that at some point an official advised Bonnie Springs that the county would not approve a transfer of water rights from Bonnie Springs to the property for purposes of supplying water to a subdivision, that testimony does not show that Bonnie Springs knew, in advance of the contract, that Land Baron would be unable to procure *any* water rights for the property.

August 2006 request for permission from Clark County to request a right-of-way across BLM land.[8]

Thus, we conclude that Bonnie Springs cannot be liable for nondisclosure regarding water rights or access.[9] Accordingly, we conclude that summary judgment was appropriate as a matter of law on Land Baron's nondisclosure claim.

*The district court's denial of Land Baron's motion for a directed verdict on Bonnie Springs' abuse of process and nuisance counterclaims*

We next turn to whether the damages award was proper on Bonnie Springs' abuse of process and nuisance counterclaims, and whether Bonnie Springs was required to provide evidence of physical harm in order to recover emotional distress damages. We review questions of law de novo. *See Gonski v. Second Judicial Dist. Court*, 126 Nev. 551, 557, 245 P.3d 1164, 1168 (2010).

*Abuse of process*

To support an abuse of process claim, a claimant must show "'(1) an ulterior purpose by the [party abusing the process] other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding.'" *LaMantia v.*

---

[8]We reject Land Baron's argument that a prior dispute between Bonnie Springs and the BLM regarding a parking lot on the Bonnie Springs Ranch indicated that Bonnie Springs was aware of potential access issues because that dispute did not concern widening or paving either Los Loros Lane or Gunfighter Lane.

[9]Because the record reveals that Bonnie Springs was not aware of the water rights and access issues, we do not address amicus curiae party Prudential Americana Group's argument that allowing Bonnie Springs not to disclose these issues will detrimentally harm purchasers of real estate by reinstating strict application of the rule of caveat emptor in Nevada.

*Redisi*, 118 Nev. 27, 31, 38 P.3d 877, 880 (2002); *Posadas v. City of Reno*, 109 Nev. 448, 457, 851 P.2d 438, 444-45 (1993) (quoting *Kovacs v. Acosta*, 106 Nev. 57, 59, 787 P.2d 368, 369 (1990)); *see also Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 114 Nev. 823, 843, 963 P.2d 465, 478 (1998). Thus, the claimant must provide facts, rather than conjecture, showing that the party intended to use the legal process to further an ulterior purpose. *LaMantia*, 118 Nev. at 31, 38 P.3d at 880 (holding that where the party presented only conjecture and no evidence that the opposing party actually intended to improperly use the legal process for a purpose other than to resolve the legal dispute, there was no abuse of process). The utilized process must be judicial, as the tort protects the integrity of the court. *ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625, 644 (Ct. App. 2001); *Stolz v. Wong Commc'ns Ltd. P'ship*, 31 Cal. Rptr. 2d 229, 236 (Ct. App. 1994). Furthermore, the tort requires a "willful act," and the majority of courts have held that merely filing a complaint and proceeding to properly litigate the case does not meet this requirement. *See, e.g.*, *Pomeroy v. Rizzo*, 182 P.3d 1125, 1128 (Alaska 2008); *Ramona Unified Sch. Dist. v. Tsiknas*, 37 Cal. Rptr. 3d 381, 389 (Ct. App. 2005); *Weststar Mortg. Corp. v. Jackson*, 61 P.3d 823, 831 (N.M. 2002); *Muro-Light v. Farley*, 944 N.Y.S.2d 571, 572 (App. Div. 2012); *Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.)*, 82 P.3d 1199, 1217 (Wash. Ct. App. 2004).

We agree with the majority rule that filing a complaint does not constitute abuse of process. The tort requires a "willful act" that would not be "proper in the regular conduct of the proceeding," *Kovacs*, 106 Nev. at 59, 787 P.2d at 369, and filing a complaint does not meet this requirement. Moreover, we agree with other jurisdictions' holdings that

abuse of process claims do not encompass actions involving administrative agencies. *See, e.g., ComputerXpress,* 113 Cal. Rptr. 2d at 644. The tort requires the abuse of "legal process," *Kovacs,* 106 Nev. at 59, 787 P.2d at 369, but courts are not usually involved in the conduct of administrative agencies. *Crowe v. Horizon Homes, Inc.,* 116 S.W.3d 618, 623 (Mo. Ct. App. 2003) (in contrast to administrative process, legal process is founded upon court authority).

Here, Bonnie Springs failed to establish the elements of abuse of process. Bonnie Springs alleges that Land Baron abused process by filing a civil complaint and by filing a citizen's complaint with the county commissioner for the ulterior purpose of coercion. However, filing a citizen's complaint does not demonstrate abuse of *legal* process, and Bonnie Springs has alleged no facts that show Land Baron improperly abused the legal process in filing its complaint or litigating the case. Nor did it present any evidence at trial of an improper motive, other than its own allegations that Land Baron filed its complaint for an ulterior purpose. Therefore, we conclude that the district court erred in denying Land Baron's motion for a directed verdict on the abuse of process counterclaim.[10]

---

[10]We likewise conclude that the district court abused its discretion by denying Land Baron's motion for reconsideration on this issue. *AA Primo Builders, LLC v. Washington,* 126 Nev. 578, 589, 245 P.3d 1190, 1197 (2010) (noting that a motion for reconsideration is reviewed for an abuse of discretion when appealed with the underlying judgment).

*Nuisance*

Nuisance arises where one party interferes with another party's use and enjoyment of land, and that interference is both substantial and unreasonable. *Sowers v. Forest Hills Subdivision*, 129 Nev., Adv. Op. 9, 294 P.3d 427, 432 (2013). In its answer to the complaint, Bonnie Springs based its nuisance counterclaim on the complaint filed with the county commissioner and the resulting inspection, alleging that this inspection caused "needless expense and loss of income" and that recoverable costs were incurred when Bonnie Springs paid attorney fees to defend itself in the ensuing litigation. During trial, however, Bonnie Springs' representatives admitted that it had suffered no known economic harm as a result of the inspection, and although it believed the inspection had damaged its reputation, it presented no evidence to that extent. Instead, they urged the jury to award damages for the emotional pain and suffering inflicted by the nuisance.[11]

Courts differ on whether a plaintiff must prove physical harm to recover for emotional distress arising under a nuisance claim. *Compare Bailey v. Shriberg*, 576 N.E.2d 1377, 1380 (Mass. App. Ct. 1991) (concluding that evidence of physical injury is necessary in an emotional distress claim based on nuisance), *with Herzog v. Grosso*, 259 P.2d 429, 433 (Cal. 1953) (determining that occupants could recover for mere

---

[11]On appeal, Land Baron does not argue that the district court inappropriately included the Bonnie Springs' entities in the counter-plaintiff category and, thus, does not argue whether such entities are incapable of emotion. *See HM Hotel Properties v. Peerless Indem. Ins. Co.,* 874 F. Supp. 2d 850, 854 (D. Ariz. 2012). Accordingly, we do not address this distinction.

annoyance and discomfort, such as lack of sleep, for a cause of action for nuisance). However,

> [i]t seems to be the prevailing view in most jurisdictions that, in a nuisance action, an owner or occupant of real estate is entitled to recover damages for personal inconvenience, discomfort, annoyance, anguish, or sickness, distinct from, or in addition to, damages for depreciation in value of property or its use.

Tracy A. Bateman, Annotation, *Nuisance as Entitling Owner or Occupant of Real Estate to Recover Damages for Personal Inconvenience, Discomfort, Annoyance, Anguish, or Sickness, Distinct From, or in Addition To, Damages for Depreciation in Value of Property or Its Use*, 25 A.L.R. 5th 568 (1994). *See, e.g., Kornoff v. Kingsburg Cotton Oil Co.*, 288 P.2d 507, 512 (Cal. 1955) (reiterating that "[o]nce a cause of action for trespass or nuisance is established, an occupant of land may recover damages for annoyance and discomfort that would naturally ensue") (internal quotations omitted); *Webster v. Boone*, 992 P.2d 1183, 1185-86 (Colo. App. 1999) (holding that damages for nuisance claim can include discomfort and annoyance); *Reichenbach v. Kraska Enters., LLC*, 938 A.2d 1238, 1245 (Conn. App. Ct. 2008) (holding that trier of fact can consider discomfort and annoyance in nuisance damages claim). Further, Restatement (Second) of Torts § 929(1)(c) (1979) provides that the damages for nuisance include "discomfort and annoyance" to the occupants.

This court has not previously addressed emotional distress damages arising under a nuisance claim. We conclude that California, Colorado, Connecticut, and the Restatement offer the better-reasoned approach for recovering damages based on a nuisance claim. Because damages for nuisance include personal inconvenience, discomfort,

SUPREME COURT
OF
NEVADA

(O) 1947A

18

annoyance, anguish, or sickness, an occupant need not show physical harm to recover.

Bonnie Springs bases its nuisance counterclaim on Land Baron's complaint to the county commissioner and the resulting inspection of Bonnie Springs Ranch. The record shows that the inspection lasted several hours, during which the group of inspecting agents separately moved through the property conducting a thorough search, which included pulling apart beds in the motel and searching dark areas with a black light. Bonnie Springs' representatives testified that the inspection caused an interruption in business and that it believed the ranch's reputation had suffered as a result, even though the county failed to find evidence of any of the violations alleged by Land Baron. Bonnie Springs' representatives also testified that they lost sleep, had anxiety, and were very upset from the investigations and inspection.

While we do not opine as to whether the facts are sufficient to support a nuisance claim, the facts here support the damages arising under such a claim. Accordingly, we conclude that the district court did not err by denying Land Baron's motion for a directed verdict on the nuisance counterclaim, as Bonnie Springs presented evidence sufficient to merit a damages award.

## *CONCLUSION*

Because insufficient facts exist to support the abuse of process counterclaim, the district court erred in refusing to enter a directed verdict on this counterclaim. Therefore, the judgment on the jury's award of

compensatory and punitive damages[12] for the abuse of process claim must be reversed. Conversely, we affirm the damages award and corresponding punitive damages award under the nuisance counterclaim.[13] Based on our decision, we thus affirm the district court's award of attorney fees and costs.[14]

---

[12]Punitive damages generally may not be awarded when there is no basis for compensatory damages. *See Tucker v. Marcus*, 418 N.W.2d 818 (Wis. 1988). *See also* Richard C. Tinney, J.D., Annotation, *Sufficiency of Showing Actual Damages to Support Award of Punitive Damages— Modern Cases*, 40 A.L.R. 4th 11, § 2[a] (1985) ("The general rule that punitive damages may not be awarded unless the party seeking them has sustained actual damage is accepted universally . . . ."); J.D. Lee & Barry A. Lindahl, 2 *Modern Tort Law: Liability and Litigation* § 21:49 (2d ed. 2002) ("As a general rule a plaintiff is required to establish actual damages before he or she may be entitled to recover punitive damages."); John J. Kircher & Christine M. Wiseman, 1 *Punitive Damages: Law and Practice* 2d § 5:21, 401 (2015) ("Abundant authority exists to support the proposition that a finding must be entered entitling the plaintiff to actual damages before that plaintiff will be allowed to recover punitive damages.").

[13]After review, we conclude that Land Baron's remaining arguments are without merit.

[14]We disagree that sanctions should issue for Bonnie Springs' "trial by ambush." Trial by ambush traditionally occurs where a party withholds discoverable information and then later presents this information at trial, effectively ambushing the opposing party through gaining an advantage by the surprise attack. *See, e.g., Clark v. Trailways, Inc.*, 774 S.W.2d 644, 646 (Tex. 1989); *Johnson v. Berg*, 848 S.W.2d 345, 349 (Tex. App. 1993). Here, Land Baron points to instances where Bonnie Springs briefly raised arguments and evidence that Land Baron was already aware of and objected to during the trial. The trial judge either overruled these objections or sustained them and took steps necessary to mitigate any damage. Such is not the type of action or level of seriousness that constitutes trial by ambush.

Accordingly, for the reasons set forth above, we affirm in part and reverse in part the district court's orders and judgment.

_____, C.J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Cherry

SUPREME COURT
OF
NEVADA

(O) 1947A